John M. HARRINGTON, et al.

v.

INHABITANTS OF TOWN OF KENNE-
BUNK and Virginia E. Dionne.

Supreme Judicial Court of Maine.

Argued March 11, 1983.

Decided April 26, 1983.

Reagan & Adams, David P. Cullenberg (orally), Kennebunk, for plaintiff.

Ayer & Hodsdon, Gordon C. Ayer (orally), Kennebunk, for Dionne.

Smith & Elliott, Roger S. Elliott, Saco, for Town of Kennebunk.

Before GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

In July, 1981, the Kennebunk Building Inspector denied Appellant Dionne's request to rebuild, relocate, and enlarge a structure destroyed by fire. Dionne appealed to the Kennebunk Zoning Board of Appeals and that Board reversed the Inspector's decision. Appellees Harringtons, the abutting landowners, appealed the Board's action to the Superior Court, pursuant to M.R.Civ.P., Rule 80B. The Superior Court justice reversed the Board's decision and revoked Dionne's building permit. Dionne appeals.

Dionne owns a corner lot and an adjoining lot in Kennebunk. Dionne's lots lie between the Harringtons' lot and the Atlantic Ocean. A one and one-half story garage, containing parking space for cars and living quarters for a chauffeur, had been situated on Dionne's corner lot. The garage had been a nonconforming structure violating the setback and sideline requirements of the Kennebunk Zoning Ordinance. The garage burned in 1978.

In her appeal of the Inspector's denial of her request to rebuild, relocate, and enlarge the burned structure, Dionne argued to the Board that she was entitled to rebuild the destroyed "structure" as a matter of right under sections 1.4(C), 1.5(A) and/or 1.5(B) of the Kennebunk Zoning Ordinance. She also argued that undue hardship existed to authorize a variance, which would permit her to enlarge the structure. According to Dionne, she could build, depending on her choice of lot front, either a 10′ × 35′ structure or no structure at all, unless a variance was granted.

The Board's findings of fact establish that at the Board's meeting in August, 1981, the Board determined that Dionne "had the right" to rebuild her structure because the lot satisfied all the conditions of section 1.5(A) of the Kennebunk Zoning Ordinance. The Board also passed a motion

allowing construction of the structure in a relocated portion of the lot. At the Board's second meeting in September, 1981, Harrington appeared and opposed Dionne's request. Eventually, however, the motion was passed granting Dionne permission "to build a structure relocated on the lot and two feet wider on two sides."

Dionne's application for a permit to build a single family house was approved in October, 1981. Pursuant to Rule 80B, the Harringtons filed a complaint in Superior Court for a review of the Board's action. The Harringtons alleged that Dionne's construction of the proposed structure would "alter the character of the neighborhood and will decrease the value of Plaintiffs' property," and that the Board had erred in allowing the construction. Pursuant to Rule 80B(e), and after consultation with Dionne, the Harringtons submitted a record of the agency proceedings to the Superior Court. Review by the Superior Court justice was limited to that record. M.R.Civ.P. 80B(f).

In his decision and order, the Superior Court justice relied on what he described as "a sketch plan" of the lot, which was submitted with Dionne's building permit, and on a subdivision plan of record to determine that Dionne's corner lot lies between the Harringtons' property and the ocean. On that basis, the justice found that the "potential for obstruction of view gives rise to particularized injury and therefore standing on the part of Harringtons."

The justice further determined that Dionne could not build her single family house on her corner lot under any of the three possibly applicable sections of the Kennebunk Zoning Ordinance. He found that Dionne could not rebuild under section 1.5(A) because the evidence showed that the lot had not been vacant in 1963, as required by section 1.5(A)(1). He found that she could not rebuild under section 1.5(B) because the lot subdivision had not been ap-

proved by the Kennebunk Planning Board, as required by section 1.5(B). The justice also found section 1.4(C) inapplicable because Dionne did not intend to rebuild the same type of structure destroyed, as required by the section.[1] He further found that the minutes of the two Board meetings did not establish that variances had ever been granted to Dionne. The justice concluded that even if the variances had been granted, that action would have exceeded the Board's authority. The justice reversed the Board's decision and revoked Dionne's building permit.

On appeal, Dionne contends (1) the Harringtons had no standing to file the 80B complaint, (2) the Superior Court justice improperly made findings of fact independent of those of the Board, and (3) the Board's findings were supported by substantial evidence and should not have been overruled. Because we find that the Board's findings of fact are insufficient to permit meaningful review by the Superior Court or by this Court, we remand the case to the Superior Court with an order to remand to the Board to permit further findings.

### I. *Standing*

Pursuant to 30 M.R.S.A. § 2411(3)(F) (1978), an appeal of a decision of a Board of Zoning Appeals may be taken "by any party" at the administrative level. Party status involves a twofold showing: (1) the appellant must have been a party before the Board and (2) the appellant must demonstrate that he will suffer a particularized injury as a result of the Board's action. *Singal v. City of Bangor,* 440 A.2d 1048, 1050 (Me.1982); *see Seven Islands Land Co. v. Maine Land Use Regulation Commission,* 450 A.2d 475, 484 (Me.1982) (Nichols and Wathen, JJ., concurring) (" 'A party has standing to appeal a judgment only where the judgment adversely and directly affects that party's property, pecuni-

---

1. Dionne admitted in her answer to the Harringtons' 80B complaint that the destroyed structure had been a one and one-half story garage. In her application for a building per-

mit, which was approved in October, 1981, Dionne described her proposed structure as a two story single family house.

ary or personal rights.'") (quoting *Gaynor v. McEachern,* 437 A.2d 867, 871 (Me.1981)).

Applying the *Singal* party-status test, it is clear that the Harringtons were a party to the Board proceedings; Harrington appeared at the Board's September meeting and expressed opposition to Dionne's request. There was, however, nothing in the record before the Superior Court justice, to which his review was limited, to support the finding that the Harringtons had standing because they would suffer the particularized injury of an obstructed view.

In his decision, the Superior Court justice stated:

> From the sketch plan submitted with the building permit, Exhibit 8, and from the subdivision plan of record, the Court takes judicial notice of the fact that Dionne's Lot No. 19 [the corner lot] lies between the Plaintiffs' property and the Ocean. The potential for obstruction of view gives rise to particularized injury and therefore standing on the part of Harringtons.

The location of the ocean is nowhere delineated on the sketch plan. The "subdivision plan of record" was not, in fact, in the record designated pursuant to Rule 80B(e). ▆ Even assuming, however, that the justice could properly take judicial notice [2] of the subdivision plan, which is recorded in the York County Registry of Deeds, and assuming that that plan shows that Dionne's corner lot lies between the Harringtons' lot and the ocean, there was, under the rules of administrative procedure and the rules of evidence, insufficient basis for the further finding of the "potential for obstruction of view." In terms of adminis-

trative procedure, there is nothing in the designated record concerning this potential problem. The Board's findings referred to the Harringtons simply as "abutters." In their Rule 80B complaint, the Harringtons alleged only that the Board's action will alter the character of the neighborhood and will decrease their property value.[3] The justice was confined to these two sources for a determination that the Harringtons had shown a particularized injury.

In terms of evidentiary propriety, the potential for obstruction of view is an improper subject for judicial notice. Whether the Dionne structure, when constructed, will obstruct the Harringtons' view sufficiently to rise to the level of a particularized injury is clearly neither a matter of uncontested common knowledge nor capable of certain verification. *State v. Rush,* 324 A.2d 748, 750–51 (Me.1974) (error to notice judicially that car is necessary for personal and family transportation); *see Union Mutual Fire Insurance Co. v. Inhabitants of Town of Topsham,* 441 A.2d 1012, 1016 (Me.1982) (prior pleadings filed in related action proper subject for judicial notice); *State v. Cedre,* 314 A.2d 790, 798 (Me.1974) (fact that drug addiction impairs observation, understanding, and retentivity not proper subject for judicial notice); *but see Gabriel v. Town of Old Orchard Beach,* 390 A.2d 1065, 1069–70 (Me.1978) (court took judicial notice of fact that commercial district of Old Orchard Beach is oriented toward tourist industry). Under the reasoning employed by the justice, according the Harringtons standing to pursue their Rule 80B appeal was error.

We express no opinion concerning the proper determination of that status when the proper evidence is considered. *See, e.g., Singal,* 440 A.2d at 1051 (possible noise and depreciation of surrounding property value sufficient to give standing to neighborhood resident); *Pride's Corner Concerned Citizens Ass'n v. Westbrook Board of Zoning Appeals,* 398 A.2d 415, 418 (Me.1979) (possible seepage, odors, and noise from sludge plant sufficient to give abutting landowner standing).

---

**2.** M.R.Evid., Rule 201(b) provides:

> (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

**3.** The issue of the Harringtons' party status as *abutting landowners could reoccur on remand.*

## II. *Superior Court Findings of Fact*

Appellant Dionne argues that in several of the Superior Court justice's determinations, which overruled the Board's decision, the Superior Court justice relied on evidence not in the designated record, misconstrued Dionne's position and the Board's rationale, and ruled on issues not contested in the Rule 80B appeal.[4] We agree.

For example, in rejecting the Board's conclusion that Dionne could rebuild her structure because her lot satisfied the requirements of section 1.5(A) of the Kennebunk Zoning Ordinance, the justice expressly found that the lot had not been vacant prior to June 17, 1963.[5] There was no evidence in the designated record before the Superior Court justice concerning the construction date of the original structure. Although the Board made no express finding on this issue, the Board impliedly found that the garage had not existed and the lot was, therefore, vacant in 1963 in ruling that section 1.5(A) was satisfied.

 It is well-established that an appellate court, in reviewing zoning board action, is not free to make findings of fact independent of those explicitly or implicitly found by the municipal zoning authority. It may not substitute its judgment for that of the municipal body, but is limited to determining whether from the evidence of record facts could reasonably have been found by the zoning body to justify its decision. *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me.1982). Although, as discussed below, the Board's findings in this case were less than comprehensive, the remedy for an agency's failure to act on all matters properly before it or to make sufficient and clear findings of fact is a remand to the agency for findings that permit "meaningful judicial review." *P.H. Chadbourne & Co. v. Inhabitants of Town of Bethel*, 452 A.2d 400, 408 (Me.1982) (Carter, J., dissenting); *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 n. 2 (Me.1980); *Brown v. Town of Wells*, 402 A.2d 57, 59 (Me.1979); *Gashgai v. Board of Registration in Medicine*, 390 A.2d 1080, 1085–86 (Me.1978); M.R.Civ.P. 80B(c); 2 Field, McKusick & Wroth, *Maine Civil Practice* § 80B.6 at 576 (Supp.1981). The remedy is not to ignore the findings and evidence of record, scant as they may be, and to embark on an independent and original inquiry.

## III. *Board Findings of Fact*

 Dionne contends that the Board's action was appropriate under the Ordinance and that the findings are supported by substantial evidence in the record. We cannot say, nor could the Superior Court have properly said, whether the Board's grant of Dionne's requests was appropriate under the Ordinance. The Board's findings of fact state its conclusions only; none of the preliminary facts, on which the conclusions were based, is articulated. For example, the Board's finding that Dionne could rebuild her structure provided, in its entirety: "The Board decided that under Sec. 1.5A the appellant had the right to build upon the lot in question. It was further decided that the lot fulfilled all other conditions in Sec. 1.5A 1, 2, 3, 4 & 5." There is nothing in the Board's findings or in the evidence, on some points, offering any possibility for

---

4. We need not here consider every instance of error. The more obvious examples of error include first, the justice's evaluation of Dionne's right to rebuild under § 1.5(B) of the Ordinance. The Board ruled that section inapplicable and that ruling was not appealed. Second, the justice concluded that Dionne could not, under § 1.4(C), rebuild a structure different from the one destroyed. Dionne argued only that she could rebuild the destroyed structure under § 1.4(C), and requested a variance for the modifications to the structure. In addition, the Board in no way relied on § 1.4(C) in its decision. Third, the justice relied on the minutes of the two Board meetings to conclude that no variance had, in fact, been granted. The minutes were not part of the designated record.

5. One of the requirements of § 1.5(A) provides that a single vacant lot may be built upon by right if the lot had been vacant prior to the adoption of the Ordinance on June 17, 1963. § 1.5(A)(1), Kennebunk Zoning Ordinance.

review of the sufficiency of the evidence to support that conclusion. There is no evidence or finding concerning the construction date of the garage, a fundamental consideration under section 1.5(A). In addition, there is no finding concerning the hardship to Dionne's property, which must have been found in order to grant the variance. There is no rationale given for the rejection of the Harringtons' merger argument, except that "[t]his fact [merger of Dionne's adjoining lot] was disputed by the Board...."

Clear and comprehensive administrative findings of fact allow meaningful judicial review rather than a rubber-stamp approach for the courts based on speculation and clairvoyance or, alternatively, judicial usurpation of the administrative function. In addition, proper findings provide more principled administrative action, help litigants structure their cases for appeal, and keep agencies within their jurisdiction. *Gashgai*, 390 A.2d at 1085. Because the findings in this case are insufficient, review is impossible, and none of these goals is served.

We reaffirm here that "it is an indispensable prerequisite to effective judicial review that an agency's decision set forth the findings of basic fact as well as the conclusions of ultimate fact and conclusions of law derived therefrom." *Gashgai*, 390 A.2d at 1085; *see Driscoll*, 441 A.2d at 1026. Once again, we remand, after three hearings in this matter, rather than to permit a Rule 80B review to be conducted on the basis of hypothesis.

The entry is

Appeal sustained.

Remanded to the Superior Court with an order to remand to the Kennebunk Zoning Board of Appeals for further findings consistent with this opinion.

All concurring.