**CUMBERLAND VILLAGE HOUSING ASSOCIATES, and Farmers' Home Administration, Plaintiffs,**

**v.**

**INHABITANTS OF the TOWN OF CUMBERLAND, et al., Defendants.**

**Civ. No. 84–0315–P.**

United States District Court, D. Maine.

May 30, 1985.

See also 605 F.Supp. 269.

James B. Haines, Jr., Peter W. Culley, Hewes, Culley & Beals, Portland, Me., for Cumberland Village Housing Associates.

Kevin A. Gaynor, Asst. U.S. Atty., Portland, Me., for U.S.

Michael A. Nelson, Kenneth Cole, III, Brian C. Shaw, Jensen, Baird, Gardner & Henry, Portland, Me., for defendants.

## MEMORANDUM OF DECISION

GENE CARTER, District Judge.

### I.

Plaintiff, Cumberland Village Housing Associates (Cumberland Village), is a limited partnership which applied to appropriate agencies of Defendant, Inhabitants of the Town of Cumberland (the Town), before March 26, 1984, for approval of a 70-unit apartment complex. The Town's Planning Board reviewed the subdivision application and, in accordance with Section 7.15 of the Town's subdivision ordinance, referred to the Town Council the question as to whether the proposed development would "be a burden" on the Town's sewer system. On March 26, 1984, the Town Council, noting a limited capacity of the sewer system, enact-

ed a 90-day moratorium on action by the Planning Board with respect to applications for buildings that proposed to use the sewer system.

On June 25, 1984, the Town Council, following a public hearing, adopted a formula for allocation of remaining sewer user units and voted to inform the Planning Board that the Cumberland Village project would impose an "undue burden" on the existing sewer system. After obtaining a clarification of the Town Council's action with respect to Cumberland Village, the Planning Board advised Cumberland Village on or after July 11, 1984, that it would take no further action on its subdivision application.

Cumberland Village brought this action challenging the Town's rejection of its subdivision application. The Farmers' Home Administration (FmHA) has joined as a Plaintiff. FmHA, which agreed to provide up to 2.5 million dollars in funding for the Town's sewer project, contends that the Town's rejection of Cumberland Village's application violates FmHA's agreements with the Town.

▮ Plaintiffs contend that the Town's denial of Cumberland Village's application for sewer access was unlawful in several respects: that the Town unlawfully applied ordinances to Cumberland Village's application that were enacted after Cumberland Village filed its application; that the denial violated the Loan Resolution and grant agreement adopted by the Town in connection with its obtaining FmHA funding; that the Town exceeded its authority in enacting the sewer allocation formula; that the formula is unreasonable; that even if the allocation formula is valid and legally applicable, there remains sufficient capacity above and beyond that contemplated in the formula to accommodate Cumberland Village's needs.[1] Most of the evidence adduced at trial related to this last issue.

---

1. Cumberland Village has also argued that it has a "common law" right to presently-available sewer capacity and that the Town may not deny current applications in order to reserve capacity for future uses. The Maine Supreme Judicial Court made clear in *Tisei v. Town of Ogunquit*, 491 A.2d 564 (Me.1985), that no such common law right is recognized in Maine. There the

As the Court will explain in greater detail, it has found that the Town applied the moratorium and the sewer use allocation formula to Cumberland Village's application. Under Maine statutory and case law, application of these ordinances to a pending application was unlawful. Therefore, the decision of the Town Council must be vacated, and the application remanded to the Town for reconsideration. Since reconsideration of the primary action complained of is necessary, the Court does not reach the other claims raised by Cumberland Village and FmHA.

## II.

■ Initially, the Court must address the question of whether it has subject matter jurisdiction over all of the claims in this case. The Court clearly has jurisdiction over Plaintiff FmHA's claims under 28 U.S.C. § 1345, which confers federal jurisdiction in all cases in which the United States is a plaintiff, and 7 U.S.C. 1981(e), which authorizes the Secretary of Agriculture to sue to enforce its claims. The jurisdictional basis for Cumberland Village's claims is less clear. Cumberland Village asserts two theories of jurisdiction. First, it contends that its claims raise a substantial federal question, and that the Court may hear its state law claims under the doctrine of pendent jurisdiction. Second, even if there exists no substantial federal question, Cumberland Village claims the right to bring its claims as a pendent party plaintiff. The Town agrees that jurisdiction exists under the second theory.

■ The existence of federal question jurisdiction presents difficult issues that have not been satisfactorily addressed by Cumberland Village.[2] The Court has determined, however, that it has power to decide Cumberland Village's claims under the doctrine of pendent party jurisdiction.

■ The Court of Appeals for the First Circuit has derived from Supreme Court cases a four-step analysis for determination of the existence of pendent party jurisdiction. *See Federal Deposit Insurance Corporation v. Otero*, 598 F.2d 627 (1st Cir. 1979). The Court is to determine, first, whether the exercise of jurisdiction is permitted by Article III of the Constitution; second, whether jurisdiction is barred by any express or implied congressional intent; third, whether the procedural posture of the pendent party supports the exercise of jurisdiction; and fourth, whether prudential considerations support the exercise of jurisdiction. *Id.*

■ The existence of Article III jurisdiction is determined by applying the standard enunciated in *United Mine Workers*

---

Court held that a town has the authority under the Maine "Home Rule" Statute, 30 M.R.S.A. § 1917, to enact an ordinance requiring developers to obtain a sewer user permit before obtaining access and limiting the total yearly increase in discharge into the system and the number of permits any builder may receive. *Id.*, at 567, 569–71.

**2.** Cumberland Village offers two bases for federal question jurisdiction. First, it argues that its claim somehow arises under 7 U.S.C. § 1926, which provides in part that any sewer construction grant awarded by the FmHA

shall not exceed 75 percentum of the development cost of the project to serve the area which the association determines can be feasibly served by the facility and to adequately serve the reasonably foreseeable growth needs of the area.

7 U.S.C. 1926(a)(2). This provision on its face merely limits the percentage of funding FmHA may provide for a sewer project; it does not

expressly or implicitly provide a right of action to persons seeking access to a FmHA funded sewer system. The relationship of Cumberland Village's claims to the statute is far too attenuated to support a conclusion that this case "arises under" a federal statute. *See San Juan Legal Services, Inc. v. Legal Services Corp.*, 655 F.2d 434, 437 (1st Cir.1981).

Cumberland Village also contends that any rights it may derive from the Loan Resolution adopted by the Town as a condition of obtaining FmHA funding are governed by federal common law. Cumberland Village has failed, however, to offer plausible reasons why the *specific claims* it brings, which fundamentally raise state law issues, should be governed by federal law merely because a federal agency is a party to agreements of which it may be a third-party beneficiary. *See American Invs-Co Countryside, Inc. v. Riverdale Bank*, 596 F.2d 211 (7th Cir. 1979).

v. *Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *Aldinger v. Howard*, ·427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Otero*, 598 F.2d at 631. The Court is to determine whether the claims of FmHA and Cumberland Village arise from the same "nucleus of operative facts" and thus involve the same "case" for purposes of Article III jurisdiction. *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138; *Otero*, 598 F.2d at 631. Here, both FmHA and Cumberland Village complain of the same action, the Town's refusal to provide Cumberland Village sewer access, and seek the same relief, access to the sewer system by Cumberland Village. Their claims clearly arise from the same "nucleus of operative facts."

■ Second, *Aldinger* teaches that a federal court must also examine the statute conferring jurisdiction in the particular case to determine whether there exists an express or implied congressional intent to prevent the exercise of jurisdiction over pendent parties even though Article III jurisdiction would exist. *Aldinger*, 427 U.S. at 17, 96 S.Ct. at 2421; *Kroger*, 437 U.S. at 373, 98 S.Ct. at 2402; *Otero*, 598 F.2d at 631. The basis for jurisdiction over FmHA's claims is the broad jurisdictional grant of 28 U.S.C. § 1345, which provides:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of *all civil actions, suits, or proceedings* commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

(Emphasis added.) Nothing in the plain language of this statute suggests an intent by Congress to prevent the exercise of jurisdiction over parties appending their claims to actions brought by an agency of the United States. *Contrast Aldinger*, 427 U.S. at 16–18, 96 S.Ct. at 2421–22 (1976).

■ Once the hurdles of Article III and the jurisdictional statute are crossed, the procedural context in which the nonfederal claim arose should be examined. *Otero*,

598 F.2d at 631; *Kroger*, 437 U.S. at 375–76, 98 S.Ct. at 2403–04. In *Otero*, the First Circuit found that the non-federal claim in question was truly "ancillary" in the sense that its procedural characteristics demonstrated a logical dependence upon the federal claim. 598 F.2d at 632. The Court found it significant that the party seeking to avoid federal jurisdiction could have been impleaded under Fed.R.Civ.P. 14. In this case, Cumberland Village's claims are not necessarily logically dependent upon resolution of FmHA's claims. The claims of the two parties, however, are tightly intertwined, and Cumberland Village, had it not filed initially as a plaintiff in this action, could have intervened as of right· under Fed.R.Civ.P. 24(a). The essence of FmHA's cause of action is that the Town violated its agreement to provide service to all persons who could feasibly and legally be served, unless FmHA concurs in the refusal to provide service to such persons. Adjudication of FmHA's claims would require a determination of whether Cumberland Village could feasibly and legally be served by the sewer system; thus, determination of the legal rights of Cumberland Village is an integral part of FmHA's claims, and intervention as of right under Fed.R.Civ.P. 24 would be proper.

■ Finally, the Court is to determine whether various prudential factors support its exercise of discretion in hearing the claim. *Otero*, 598 F.2d at 633. A particularly compelling discretionary factor in this case is judicial economy. If the Court declined to hear Cumberland Village's claims, it is likely that the very same legal issues would be adjudicated in two different actions, one in federal court and the other in state court. Of particular significance in this case is the fact that this Court has already devoted considerable resources to decision on motions and to trial of this case; the only step left to be taken is a decision on the merits. Second, because the issues underlying the claims of both Cumberland Village and FmHA are identical, their separate trials would raise a "distinct possibility of conflicting obligations." *Otero*, 598

F.2d at 633. Third, no party has suggested that this Court's exercise of jurisdiction will cause inconvenience. *See id.*

One prudential factor noted in *Otero,* however, would militate against the exercise of jurisdiction in this case. Unlike the issues in *Otero,* the pendent claims in this case present difficult questions of state law. *See id.* This Court indeed has grave doubts about whether it properly should be deciding such questions of state law. Even if Cumberland Village were not a party, however, the Court would have to resolve these questions of state law in order to decide FmHA's claims. This latter consideration, along with those of judicial economy and fairness, outweighs the Court's misgivings about deciding the difficult issues of state law presented by Cumberland Village. Accordingly, the prudential considerations identified by the First Circuit in *Otero* support the exercise of pendent jurisdiction in this case.

### III.

■ The Maine Legislature has enacted a general "savings" statute which provides in pertinent part:

> Actions and proceedings pending at the time of the passage or repeal of an Act or ordinance are not affected thereby. For the purposes of this section, a proceeding shall include but not be limited to petitions or applications for licenses or permits required by law at the time of their filing.

1 M.R.S.A. § 302. "Proceedings" include applications for subdivision approval pending before municipal agencies. *Cardinali v. Planning Board of Lebanon,* 373 A.2d 251, 253 (Me.1977). In *Cardinali,* the Maine Supreme Judicial Court held that the savings statute precluded the Town of Lebanon from applying a moratorium on subdivisions to a subdivision application filed before the enactment of the moratorium. *Id.* The Court applied the straightforward

language of the savings statute in a straightforward manner: "Cardinali's application is not affected by the moratorium if it was pending prior to March 8, 1975 when the moratorium was enacted." *Id.*

The Supreme Judicial Court had another occasion to apply the savings statute to a municipal land use regulation proceeding in *Littlefield v. Inhabitants of Town of Lyman,* 447 A.2d 1231 (Me.1982). The Court held that application of a moratorium on subdivision applications and a subsequently enacted zoning ordinance to a pending subdivision application was barred by the savings statute.

■ The Law Court found no need in either *Cardinali* or *Littlefield* to undertake an extended analysis of the effect of 1 M.R.S.A. § 302. The meaning of the language—"proceedings pending at the time of the passage or repeal of an Act or ordinance are not affected thereby"—is plain. In this case, the Town concedes that Cumberland Village's subdivision application and sewer permit application were pending on March 26, 1984, the date the Town enacted the moratorium, and June 25, 1984, the date the Town enacted the sewer allocation formula.[3] Nor does the Town contend that the sewer allocation formula is not an "ordinance" within the meaning of 1 M.R.S.A. § 302. Thus the declaration contained in 1 M.R.S.A. § 302 that pending applications "are not affected" by new ordinances must be applied in this case.

The Court must determine whether the sewer allocation ordinance was in fact applied to Cumberland Village's application. Cumberland Village's application for subdivision approval was accepted by the Town Planning Board in January of 1984. The Planning Board gave preliminary approval of the proposal on May 1, 1984. Exhibit 64. The Planning Board indicated that prior to consideration of a final subdivision plan it would require, among other things,

---

**3.** The difficult issue confronted by the Maine Supreme Judicial Court in *Cardinali* and *Littlefield* was whether the applications considered in those classes were "pending" within the mean-

ing of 1 M.R.S.A. § 302 at the time the ordinances complained of were enacted. This issue is not presented by this case.

a certificate in accordance with the following provision of the Town's subdivision ordinance:

> Where a public sanitary sewer line is located within 200 feet of a proposed subdivision at its nearest point, the subdivider shall connect with such sanitary sewer line with a main not less than 8 inches in diameter, *provided the appropriate municipal agencies certify that extending the services will not be a burden on the system.*

Town of Cumberland Subdivision Ordinance, Section 7.15(C) (emphasis added). The Planning Board interpreted the "appropriate" municipal agency to be the Town Council and accordingly referred the question as to whether the Cumberland Village development would "be a burden on the system" to the Town Council. In addition to Planning Board approval and the sewer use certificate, Cumberland Village was required to obtain a "special exception" from the Cumberland Board of Adjustment and Appeals. This was obtained, subject to several conditions, including Town Council approval of sewer use, on June 21, 1984. Exhibit 41.

The date the Planning Board referred the sewer access question to the Town Council is uncertain, but it is undisputed that Cumberland Village presented proposals regarding sewer use to the Town Council at its meeting of March 26, 1984. In addition, Cumberland Village presented a letter and supporting data collected by its engineer, James W. Parker, regarding the impact of proposed development upon the sewer system. See Exhibit 21. Cumberland Village requested the Town Council to treat its 70 proposed one-bedroom and two-bedroom apartments as requiring the equivalent of only 47 single family home sewer user units. Cumberland Village also proposed an alternative, "off-peak pumping system" by which it would retain waste water during peak sewer use hours, then pump it into the system during the hours of lowest use. Interestingly, Cumberland Village's appearance at the meeting of March 26 is not reflected in the minutes of that meeting. See Exhibit 20. Walter Corey, a general partner of Cumberland Village, testified, however, that he was present at the meeting with three other Cumberland Village representatives and that they presented the proposals reflected in the March 26 letter to the Council. Corey's testimony is corroborated by the existence of the letter of March 26. There is no evidence contradicting it. Accordingly, the Court finds that, no later than March 26, 1984, the Town Council was presented with a request from Cumberland Village for sewer access which comprehended two alternative modes of discharge.

 At the meeting of March 26, 1984, the Town Council enacted a 90-day moratorium

> during which the Planning Board will not pass upon or approve any pending or new applications for buildings for uncommitted lots which propose to use the new sewer ...

Minutes of March 26, 1984, Town Council Meeting, Exhibit 20. The Court finds that this moratorium was applied to Cumberland Village's pending subdivision application. Indeed, by its express terms it applies to all "pending" applications. In this respect, the moratorium on its face violated 1 M.R.S.A. § 302 as applied in *Cardinali* and *Littlefield.* The Town contends that since the moratorium has expired, the question as to its legality is moot. The Court need not address the issue, however, since it has determined that the Town also unlawfully applied the sewer allocation formula to Cumberland Village's application.

The Town Council enacted the sewer allocation formula on June 25, 1984. See Exhibit 35. The Council found that the total capacity of the sewer system is 750 user units and voted to allocate these units in the following manner: 501 for existing users, 27 for the high school, 20 for Brentwood Estates subdivision, 63 for vacant lots abutting the sewer systems, 80 for potential failures of on-site septic systems and 35 for future commercial and industrial uses. *Id.* Thus the Council allocated 726 of the 750 available units. *Id.* The Council

further voted to grant permits for the remaining 24 unreserved units at the rate of six per year. *Id.*

The minutes indicate that the next action taken by the Council on June 25, 1984, after its enactment of the allocation formula, was a unanimous vote to inform the Planning Board that the Cumberland Village project would "impose an undue burden on the sewer system pursuant to Section 7.15(C) of the subdivision ordinance". *Id.* This sequence of actions leads the Court to conclude that the Town Council applied the sewer allocation ordinance to Cumberland Village's application and that the ordinance was the basis for the Council's finding that the project would impose an undue burden on the sewer system.

The Town contends that even if the allocation ordinance was the basis for its action regarding Cumberland Village, 1 M.R.S.A. § 302 should not be applied to invalidate the Town's action. The Town offers some persuasive arguments in support of its position. The Court has carefully considered these arguments and concludes that the plain language and the underlying policy of 1 M.R.S.A. § 302 compel the conclusion that the Town's action was unlawful.

This case is different from *Littlefield* in one significant respect. In *Littlefield,* the developer had proposed a subdivision composed of two-acre lots. At the time he applied for approval, the Town's zoning ordinance required a minimum lot size of two acres. The Town increased the minimum lot size to five acres after the developer filed his application. At least with respect to lot size, therefore, it is clear that the developer's proposal complied with the zoning ordinance before it was amended, but not after it was amended.

In this case, Cumberland Village had no assurance that its request for sewer access would be granted before the allocation formula was adopted. Section 7.15(C) of the subdivision ordinance clearly provided that certification, by appropriate municipal agencies, that the subdivision would not be a burden on the system was required. This

provision did not confer any particular rights upon Cumberland Village. Nor was there any history of interpretation of Section 7.15(C) by the Town Council. As far as can be determined from the record, the Town Council's decision to deny Cumberland Village sewer access was the first instance in which the Council acted under Section 7.15(C). Thus Cumberland Village cannot and does not claim that prior practice under Section 7.15(C) was altered by the adoption of the sewer allocation formula.

 There is nothing, however, in 1 M.R.S.A. § 302 or the judicial decisions interpreting it that indicates that it applies only to subsequently enacted ordinances which alter rights conferred by or expectations based upon ordinances existing at the time proceedings were commenced. It simply states that proceedings pending at the time an ordinance is enacted "are not affected" by the newly enacted ordinance. A literal application of the plain language of Section 302 finds support in the distinction noted by the Law Court in *Littlefield* between the legal effect of Section 302 and the vested rights theory. There, the defendants argued that the Law Court should incorporate the vested rights theory into Section 302. 447 A.2d at 1233, n. 2. The Court declined to do so, stating:

> Where, as here, a statutory right in the form of Section 302 is dispositive of the matter at issue, we need not look to constitutional limitations or the judicial constructs and derivations thereof to resolve the dispute. *We conclude that if a party establishes his rights to the application of an ordinance under Section 302 as interpreted in Cardinali, the failure to satisfy the "vested rights" theory of Thomas [v. Zoning Board of Appeals, 381 A.2d 643 (Me.1978)] does not preclude application of that ordinance.*

*Id.* (Emphasis added). Thus, the Court made it clear that at the very least the existence of constitutionally derived "vested rights" as defined in *Thomas v. Zoning Board of Appeals,* 381 A.2d 643 (Me.1978),

is irrelevant to determination of the effect of Section 302. Here, the Town does not insist that Section 302 applies only when rights have "vested" within the meaning of *Thomas*. Rather, the Town argues that Section 302 will apply only if application of the subsequently enacted ordinance prejudices the applicants. Since the developer had no fixed rights or justifiable expectations under Section 7.15(C), the Town argues, application of the ordinance can have no prejudicial effect. The Court disagrees. *Littlefield's* distinction between Section 302 and the vested rights theory indicates that the Law Court employs a plain language construction of Section 302 which does not require a finding of the kind of prejudice which the Town alleges to be absent in this case.

In a variation of its argument that there is no prejudice, the Town suggests that Section 302 would not apply if the Town had made precisely the same findings it made prior to enacting the allocation formula but had stopped short of enacting the formula as an ordinance. Doubtless Section 302 would not apply if there were no ordinance. Here, the Town concedes, however, that the sewer allocation formula is an ordinance. Section 302 must therefore be applied to govern its appropriate usage in the consideration of Cumberland Village's application.

Nor is the Court persuaded that Cumberland Village has not suffered any prejudice whatever as a result of the enactment of the sewer allocation formula. The Town argues that "it would be incongruous to hold that the Town Council's voluntary decision to formalize its criteria and limit its discretion should invalidate an otherwise acceptable Section 7.15(C) determination." Defendant's Post-Trial Brief at 26. The Court does not determine whether the Town acted in good faith in enacting the formula, nor whether application of the formula to a subsequent sewer access application would be proper. In this case, at the time Cumberland Village made application, it did so with the expectation that the Council possessed sufficient discretion to permit sewer access. Had the allocation plan been enacted before Cumberland Village applied, Cumberland Village might well have elected not to make the commitment of resources essential to obtaining Town approval of the development. The developer may reasonably have expected, in the absence of such an allocation plan, more individualized consideration and a greater opportunity to win Town approval under the general standard of Section 7.15(C). Enactment of the sewer allocation ordinance eliminated the Town's discretion and foreclosed any chance the developer had of gaining access to the sewer.

The failure of the Town to give individualized consideration gives rise to a second reason why this case must be remanded to the Town. The record indicates that the Town Council did not adequately consider or give reasons for the rejection of Cumberland Village's off-peak pumping proposal. Cumberland Village had represented to the Town that if off-peak pumping were incorporated, there would be no effective reduction in user units available to the Town for single family homes. Letter from Charles Carroll to Town Council, Exhibit 21. After the Town Council denied Cumberland Village's request for sewer access, a representative of Cumberland Village inquired whether the Council had considered the off-peak pumping proposal. The only evidence in the record indicating what occurred at that meeting is the following excerpt from a letter from the Planning Board Chairman to the Town attorney:

During the Council meeting on Monday, July 9, the developer requested the Chair to clarify the vote of the Council (Mr. Humphreys' motion) with reference to whether off peak pumping was included, and the Council's extensive response, which was transcribed, indicated that the developer's request for both daytime access and the off peak pumping proposal had been fully considered, and that it was the decision of the Council that either proposal would cause an undue burden on the municipal sewer system.

Letter from Kenneth E. Snitger, Esq. to Kenneth M. Cole, III, Esq., July 11, 1984, Exhibit 42.

James Carruthers, an engineer employed by E.C. Jordan, which was engaged by the Town to oversee the design and construction of the sewer system and the collection of data regarding sewer system capacity, testified at the trial that he was never asked by the Town Council to study Cumberland Village's off-peak pumping proposal. Nowhere in the record do there appear any findings of fact or reasons supporting the Town's rejection of the off-peak pumping proposal. Because of the complete absence of findings respecting this proposal, review of the Town's decision respecting off-peak pumping is impossible. *See Harrington v. Inhabitants of Town of Kennebunk,* 459 A.2d 557, 562 (Me.1983); *P.H. Chadbourne & Co. v. Inhabitants of Town of Bethel,* 452 A.2d 400 (Me.1982) (Carter, J., dissenting). The Maine Supreme Judicial Court has repeatedly stated the principle that " 'it is an indispensable prerequisite to effective judicial review that an agency's decision set forth the findings of basic fact as well as the conclusions of ultimate fact and conclusions of law derived therefrom.' " *Harrington,* 459 A.2d at 562 (*quoting Gashgai v. Board of Registration in Medicine,* 390 A.2d 1080, 1085 (Me.1978)); *see Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me.1982). Assuming that the findings necessary to the Town Council's refusal to permit Cumberland Village to use 47 units are sufficient, the record is devoid of any findings pertinent to the anticipated impact of Cumberland Village's off-peak pumping proposal. Thus, remand is necessary.

The Court does not reach the other issues raised by the parties in this case. Since the allocation ordinance may not be applied, its legality is irrelevant to this decision. In addition, because the Town's decision is to be vacated, the propriety of Farmers' Home Administration's refusal to concur with that decision need not now be addressed.

On remand, the Town Council must consider Cumberland Village's proposal under the ordinances as they existed on the date Cumberland Village applied for subdivision approval. This does not, of course, preclude the Town from undertaking study of the development's impact upon the sewer system and making pertinent findings. Indeed, such findings are essential. *See Harrington, supra.* In addition, the Town Council must make appropriate findings in respect to Cumberland Village's off-peak pumping proposal.

Accordingly, it is ORDERED that the Decision of the Cumberland Town Council be, and is hereby, VACATED and that this case be, and is hereby, REMANDED to the Cumberland Town Council for further proceedings consistent with this Opinion.

So ORDERED.