Joseph J. LICHTIE and Michael J. Lichtie, Plaintiffs,

v.

U.S. HOME CORPORATION, Interstate Homes, Inc., Walter R. Wood, Robert J. Strudles, Issac Heimbinder, Larry D. Kelly and Thomas A. Quinn, Escrow Agent, Defendants.

Civ. No. C85–818G.

United States District Court,
D. Utah, C.D.

March 4, 1987.

Edward J. McDonough, Salt Lake City, Utah, for plaintiffs.

Paul S. Felt, Janet Smith, A. Robert Thorup, Thomas L. Kay, Salt Lake City, Utah, for defendants.

MEMORANDUM DECISION
AND ORDER

J. THOMAS GREENE, District Judge.

This court heard oral argument on all pending motions on February 25, 1987.

Plaintiffs were represented by Edward J. McDonough and defendants were represented by Paul S. Felt, Jan Smith, A. Robert Thorup and Thomas L. Kay. After oral argument the court ruled on several of the pending motions and took under advisement defendant's motion to dismiss the claims of Michael J. Lichtie or in the alternative motion for a separate trial and defendant's motion for summary judgment on plaintiffs' claim for tortious interference with contractual relations. The court is fully advised and enters its Memorandum Decision and Order.

## FACTS

This case involves claims of securities fraud and wrongful termination by plaintiff Joseph Lichtie and a claim of wrongful termination by Michael Lichtie against defendant U.S. Home Corporation ("U.S. Home"). Joseph Lichtie was the president and principal shareholder of Interstate Homes, Inc. ("Interstate") and Michael Lichtie was employed as a supervisor with Interstate. In 1984, U.S. Home purchased all of the outstanding stock held by Interstate's shareholders. Joseph Lichtie has brought a securities fraud claim under rule 10b–5 contending that material misrepresentations were made in connection with the sale of his shares of Interstate stock. Joseph Lichtie has alleged, among other things, that U.S. Home falsely stated that it intended to retain all of the management employees of Interstate. Joseph Lichtie and Michael Lichtie have also brought pendent state law claims for wrongful termination by U.S. Home and claims for tortious interference with contractual relations. The jurisdiction of this court is invoked by Joseph Lichtie based upon the securities laws and upon pendent jurisdiction over his other claims. Michael Lichtie attempts to invoke jurisdiction based solely upon pendent party jurisdiction.

## ANALYSIS

I. *Tortious Interference with Contractual Relations*

Joseph Lichtie and Michael Lichtie allege in their complaint that Walter R. Wood ("Wood"), president of the Interstate Division of U.S. Home, "wrongfully, intentionally, and maliciously induced and persuaded" U.S. Home and Larry D. Kelly to terminate their employment. Plaintiffs allege that such conduct is redressible in Utah as constituting tortious interference with contractual relations. Plaintiffs' theory seems to be that Wood, acting outside of the scope of his authority as president of the Interstate Division, persuaded Larry D. Kelly ("Kelly") to interview various employees of U.S. Home whom he knew held a "grudge" against Joseph Lichtie. Plaintiffs contend that Wood thereby controlled Kelly's investigation resulting in a false impression of Joseph Lichtie' performance and plaintiffs being the "scapegoats" for Wood's inadequacies, thus saving Wood's job.

Wood's basis for requesting summary judgment on the claims of tortious interference with contract is that under Utah law "one party to a contract cannot be liable for the tort or interference with contract for inducing breach by himself or the other contracting party." *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982). Wood argues that in the termination of plaintiffs' employment he acted as president of the Interstate Division and was therefore an agent for U.S. Home. It is then asserted that since U.S. Home as a matter of law cannot interfere with its own contract, defendant's motion for summary judgment must be granted. At oral argument counsel asserted that *Leigh Furniture* was legally indistinguishable from this case and that the conduct alleged in *Leigh Furniture* was in fact more egregious than that alleged here. Defendant concludes that the same principle of agency should apply here so as to impute the conduct of Wood to U.S. Home. However, in footnote one of *Leigh Furniture* the Utah Supreme Court expressly stated:

> The court instructed the jury "that it has been established that W.S. Leigh was at all times acting as the agent for plaintiff, Leigh Furniture and Carpet Company, and within the scope of his authority at

the time of the events out of which this action arose." That ruling, to which there was no objection, makes the Leigh Corporation fully responsible for all of Leigh's actions in this matter.

In addition the court in *Leigh Furniture* cites *Houser v. City of Redmond,* 91 Wash.2d 36, 586 P.2d 482, 485 (1978) wherein the Washington Supreme Court held that if "the actions of the employees were not within the scope of employment, then they are third parties potentially liable in their individual capacity" for claim of tortious interference with the corporation's contract. Therefore the suggestion of counsel that *Leigh Furniture* stands for the proposition that even outrageous conduct by a corporate officer will be imputed for purposes of the tort of interference to contractual relations is mistaken. Accordingly, a potential factual issue might exist as to whether Wood acted within the scope of his authority as president of the Interstate Division. However, we have reviewed the record before us and conclude that as a matter of law Wood was acting within the scope of his authority.

There can be no dispute but that the *type of acts* engaged in by Wood were within the scope of his authority. As president of the Interstate Division he had authority to request that Kelly investigate the performance of Joseph Lichtie. The question then becomes whether his motive in requesting such an investigation is relevant to determining whether his acts were within his authority to act for U.S. Home. The RESTATEMENT (SECOND) OF AGENCY § 235 comment a (1958) recognizes that an agent's conduct is outside the scope of employment if he or she acts with the *sole* motive of furthering personal interests.

The authors of the RESTATEMENT recognize, however, that

> it is only from the manifestations of the servant and the circumstances that, ordinarily, his intent can be determined. If, therefore, the servant does the very act directed, or does the kind of act which he is authorized to perform within working hours and at an authorized place, there is an inference that he is acting within the scope of employment.

*Id.* In addition, according to the RESTATEMENT if an agent acts with mixed motives his or her conduct will be within the scope of employment. *Id.* at § 236. The only fact pointed to by plaintiffs in support of their theory that Wood's sole motivation was personal is a statement by Wood that he believed it possible that if Joseph Lichtie were not terminated, Wood may himself have been terminated. However, plaintiffs have taken Wood's testimony out of context. When asked if Wood "believ[ed] it was him (Joseph Lichtie) or you," Wood responded, "I had no idea of that at the time." Wood also testified in his deposition that he believed it was in the best interest of U.S. Home for Joseph and Michael Lichtie to be terminated. Wood also stated that he was "accountable for the overall operation." Therefore it is clear that poor performance by Joseph Lichtie would be detrimental to Wood's standing with U.S. Home. Based upon Wood's deposition, which is the only evidence presented by plaintiffs to demonstrate bad motive by Wood, a jury could not properly conclude that Wood's *sole* motivation was personal interest. The same facts are relied upon as to both plaintiffs. Accordingly, summary judgment must be granted as against each of them.[1]

---

1. In *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Supreme Court embraced the following standard: "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.,* 106 S.Ct. at 2510. In *Celotex Corporation v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court further stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* 106 S.Ct. at 2553. Here, plaintiffs have had adequate time to discover facts regarding Wood's motivation in terminating them but have not come forward with sufficient evidence to enable a reasonable jury to rule in their favor on that essential element.

## II. *Pendent Party Jurisdiction*

The defendants in this case argue that the state law claim of Michael Lichtie for wrongful discharge is outside this court's subject matter jurisdiction. Michael Lichtie contends that his claim may be asserted based upon the principle of "pendent party jurisdiction." In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) the Supreme Court discussed the concept of pendent party jurisdiction, which is the exercise of jurisdiction by a federal court over a party as to whom no independent basis of federal jurisdiction exists. The court distinguished the concept of pendent *claim* jurisdiction by stating:

> The situation with respect to the impleading of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to implead an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." Ibid. *True, the same considerations of judicial economy would be served insofar as plaintiff's claims "are such that he would ordinarily be expected to try them all in one judicial proceeding...." Ibid. But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.*

*Id.* at 14–15, 96 S.Ct. at 2420 (emphasis added). Despite the court's reluctance to recognize pendent party jurisdiction, the court implied that in other circumstances the principle might enable a party to be brought within a federal court's jurisdiction:

> Other statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 USC § 1346 [28 USCS § 1346], the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together. As we indicated at the outset of this opinion, the question of pendent-party jurisdiction is "subtle and complex," and we believe that it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction. Two observations suffice for the disposition of the type of case before us. If the new party sought to be impleaded is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. *Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.*

*Id.* at 18, 96 S.Ct. at 2422 (emphasis added) (footnote omitted). Based upon the Supreme Court's analysis in *Aldinger*, courts have undertaken to determine whether (1) the exercise of jurisdiction is permitted under Article III, § 2 of the United States Constitution; (2) in light of the procedural posture and the specific statute that confers jurisdiction, Congress has expressly or impliedly negated the existence of jurisdiction; and (3) in the discretion of the trial court exercise of jurisdiction is proper over the parties' claims. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365,

372–73, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978); *Casey v. United States,* 635 F.Supp. 221, 226 (D.Mass.1986); *Cumberland Village Housing Associates v. Inhabitants of the Town of Cumberland,* 609 F.Supp. 1481, 1485 (D.Me.1985).

◼ The test for Article III compliance is in essence that the pendent state law claim and the underlying federal claim arise from a "common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Here it is alleged that Michael Lichtie was "led to believe by the course of conduct of Interstate Homes, over a period of employment of nine years that he was a permanent employee who would be terminated only for cause." It is not alleged in the complaint that Michael Lichtie's belief that he was more than an employee at will was related in any way to the alleged misrepresentations made in connection with the sale of Joseph Lichtie's stock. On the other hand, there is a factual overlap in Joseph Lichtie's wrongful discharge claim and his securities fraud claim in that both claims assert that U.S. Home specifically represented to Joseph Lichtie that his employment would not be terminated at will. However, it may be that Michael Lichtie was aware of the alleged representations made to Joseph Lichtie and considered such representations to be part of the course of conduct by U.S. Home directed towards him. Therefore, there may be a minimum of factual overlap between the two claims.

Defendants argue that even if there is minimal factual overlap, Congress did not provide for a *plaintiff* to invoke the principle of pendent party jurisdiction. In support of that proposition defendants cite a number of cases and this court has discovered additional cases.[2] However, each of the cases involves a basis of jurisdiction, namely diversity or a federal question, under which the plaintiffs could have brought the lawsuit in state court and tried the claims, state and federal, all in a single state proceeding. In those circumstances the courts recognize that a plaintiff should not be able to expand the jurisdictional basis of federal courts by arguing principles of judicial economy when the state forum is available to satisfy all claims asserted.[3] Although we agree with the result reached in those cases, different considerations may be present when Congress has granted to the federal court exclusive jurisdiction for the underlying claim. 15 U.S.C. § 78aa (1982) (granting exclusive jurisdiction to the federal court for violations of the Securities Exchange Act of 1934). The Supreme Court in *Aldinger* expressly stated that the principle of pendent party jurisdiction must be considered in light of each specific statute conferring jurisdiction. *Aldinger,* 427 U.S. at 18, 96 S.Ct. at 2422.

In *Casey v. United States,* 635 F.Supp. 221 (D.Mass.1986) an employee of a contractor hired by the United States sued the United States under the Federal Tort Claims Act. The employer's claim could only be brought in federal court. 28 U.S.C. § 1346. The employee's spouse also filed a pendent claim against the United States and against a third party defendant for loss of consortium. The court allowed the employee's spouse to proceed by distinguishing *Aldinger* on the basis that no

---

**2.** *See Hymer v. Chai,* 407 F.2d 136, 138 (9th Cir.1969) (court declined to exercise jurisdiction over spouse's loss of consortium claim related to diversity suit by spouse for damages); *Fritts v. Nichouse,* 604 F.Supp. 823, 830 (W.C.Ill.1984) (court declined to exercise jurisdiction over spouse's loss of consortium claim related to civil rights complaint); *Red Elk v. Vig,* 571 F.Supp. 422, 426 (D.S.D.1983) (court declined to exercise jurisdiction over children's claims for wrongful death related to civil rights complaint); *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.,* 550 F.Supp. 595, 604 (N.D.Ill.1982) (court declined to exercise jurisdiction over separate plaintiff's claims for fraud and false imprisonment related to the federal plaintiff's claims under the Truth in Lending Act); *Walters v. Village of Oak Lawn,* 548 F.Supp. 417, 420 (N.D. Ill.1982) (court declined to exercise jurisdiction over spouse's loss of consortium claim related to civil rights complaint); *Leopold v. Birckett,* 523 F.Supp. 525, 527 (E.D.N.Y.1981) (court declined to exercise jurisdiction over spouse's loss of consortium claim related to civil rights complaint).

**3.** *See Fritts,* 604 F.Supp. at 830; *Red Elk,* 571 F.Supp. at 426; *Leopold,* 523 F.Supp. at 527.

defendant was being brought into the lawsuit who would otherwise not be subject to federal jurisdiction. *Id.* at 227. Focusing upon prejudice to the defendants, the court emphasized that the additional claim of the employees' spouse simply added an additional pendent *claim* related to the primary claims asserted against defendants already present, thereby promoting "judicial economy, convenience, and fairness to litigants." *Id.*[4] The court held under those circumstances that the Federal Tort Claims Act did not bar the exercise of pendent party jurisdiction.

■ In this case, Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa provides:

> The district courts of the United States, and the United States courts of any territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

Based upon the above statute, we see no Congressional intent to preclude a plaintiff from appending a claim to the claim of another plaintiff who has invoked jurisdiction under 15 U.S.C. § 78aa. It should be noted, however, that some courts would be very reluctant to conclude that Congress envisioned that a *plaintiff* could invoke pendent *party* jurisdiction. *See Thomas v. Shelton,* 740 F.2d 478, 487 (7th Cir.1984) ("Although pendent party jurisdiction is not dead ... neither is it in the best of health.... [I]n general, pendent party jurisdiction, to the extent recognized at all, allows only defendants to be added."). This court likewise has strong reservations

in allowing plaintiffs to append state claims based upon minimal factual overlap.

■ It is apparent that Michael Lichtie's claim is not extensively intertwined with the securities fraud claim of Joseph Lichtie. Michael Lichtie's claim is based upon an employee personnel manual, documents distributed by U.S. Home to him and a course of conduct by U.S. Home over a nine year period. In establishing proof of the foregoing, witnesses involved in the alleged securities fraud may overlap to some extent with those called by Michael Lichtie. However, the claim of Joseph Lichtie for wrongful termination is distinct from Michael Lichtie's claim. Joseph Lichtie served as the president and principal shareholder of Interstate and as such has alleged that he negotiated the sale of his stock with the understanding that his employment was secure. Joseph Lichtie has also asserted a claim of damages for alleged total and permanent disability as a result of defendant's conduct. In that regard nine physicians are scheduled to testify at trial. Thus, the total overlap in witnesses between the claims of the plaintiffs is not great. Also, to the extent that some duplication exists, the overlap is not sufficient to overcome undue expansion of federal jurisdiction. In *Aldinger* the Supreme Court acknowledged that "[t]he value of efficiency in the disposition of lawsuits by avoiding multiplicity may be readily conceded, but that is not the only consideration a federal court should take into account in assessing the presence or absence of jurisdiction." 427 U.S. at 15, 96 S.Ct. at 2420. Here, this court exercises its discretion and dismisses Michael Lichtie's pendent party claim without prejudice to any further state court proceedings.

---

**4.** *See also Cumberland Village Housing Associates v. Inhabitants of the Town of Cumberland,* 609 F.Supp. 1481 (D.Me.1985). In *Cumberland* the court had subject matter jurisdiction over claims by the Farmers' Home Administration ("FmHA") based upon 28 U.S.C. § 1345, which confers federal jurisdiction when the United States is a plaintiff. The FmHA had provided funds for the town's sewer project. The court in *Cumberland* applied *Aldinger* and allowed a private contractor to append to the United States'

suit his pendent claim for breach of agreements relating to application for funding under the sewer project. The court looked at the statute that granted jurisdiction over claims of the United States and concluded: "Nothing in the plain language of this statute suggests an intent by Congress to prevent the exercise of jurisdiction over parties appending their claims to actions brought by an agency of the United States." *Id.* at 1486.

Based upon the foregoing, plaintiff Michael Lichtie's claim for wrongful discharge is dismissed without prejudice and defendant Wood's motion for summary judgment as to plaintiffs' claims for tortious interference with contractual relations is granted. This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.