John T. SULLIVAN, et al., Plaintiffs,

v.

Erving M. MARSHALL, Sr., et al., Defendants.

Civ. A. No. 80–0077–S.

United States District Court,
D. Massachusetts.

Sept. 9, 1985.

Bernard A. Dwork, Barron & Stadfield, Boston, Mass., for plaintiffs.

George C. Deptula, Berlin, Clarey & Green, and Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

SKINNER, District Judge.

In this action John T. Sullivan and Suzanne J. Sullivan (the "plaintiffs") seek damages under 42 U.S.C. § 1983 against the Town of Townsend, Massachusetts (the "town"), Selectmen Robert Struthers and Jane Jackson (the "defendant selectmen"), Chief of Police Erving M. Marshall, Sr., and four police officers (together, the "police defendants") for alleged deprivations of civil rights as well as Massachusetts statutory and common law causes of action. Their claims arise from John Sullivan's arrest at Townsend police headquarters on August 14, 1978, and an alleged pattern of harassment of the plaintiffs by the police defendants thereafter. I have before me the motions of the various defendants for summary judgment on most of these claims.

It is undisputed that Townsend Police Chief Erving Marshall, Sr. arrested John Sullivan shortly after the latter entered police headquarters around 3:45 p.m. on August 14, 1978. Sullivan was unhappy with police efforts to investigate hit-and-run damage to his automobile. By Marshall's account, Sullivan belligerently demanded to know what steps had been taken to investigate the damage to his vehicle, refused to leave the station when requested, and challenged Marshall to arrest him. When Sullivan failed to leave, Marshall arrested him and handcuffed Sullivan's right

wrist. He was unable to handcuff the left wrist. While Sullivan struggled to get away, Marshall radioed for assistance. The defendant police officers Christopher Struthers, Erving Marshall, Jr., Brown, and Kumpu arrived. They forced Sullivan against a wall and then to the floor in order to fasten his left arm in the handcuffs. Erving Marshall, Jr. then booked him for disorderly conduct and assault upon a police chief.

In Sullivan's version, Marshall painfully forced the handcuff onto his right wrist, then yanked him about the office using the other handcuff as a lead. When the other police defendants arrived, they slammed him into two walls, punching and striking him.

Defendant Marshall, Jr. threatened the uncooperative plaintiff with a can of mace while booking him. Officers Struthers and Marshall, Jr. transported him to the Ayer lockup, from there to Nashoba Valley Community Hospital for treatment of numbness in his right hand and for several bruises, cuts and abrasions, and back to the Ayer lockup. About two hours after his arrest he was released. Suzanne Sullivan met him at the hospital and later picked him up at the Ayer lockup.

That evening John Sullivan met with the defendant selectmen at town hall. He showed them his injuries and described the events of the afternoon. They told him they could not take any action individually but advised him to make a formal complaint to the Board of Selectmen. The third selectman was Ronald Rajaniemi, who is not a defendant in the case. Sullivan did so, and the Board held a hearing on August 22, 1978, at which Sullivan and the police defendants each told their sides of the story. The affidavits of the defendant selectmen and their answers to interrogatories conflict on whether the Board took no further action or instead voted to deny John Sullivan's claim.

The plaintiffs allege that the police defendants harassed them for several years after the incident of August 14 by parking cruisers immediately outside the plaintiffs' home on the Townsend Common at all hours as many as fifty times from August 1978 and mid-1981, by making obscene gestures to the plaintiffs and their friends, and by tailgating the cars of the plaintiffs and their friends. John Sullivan identified Police Chief Marshall, Officer Marshall, Jr. and Officer Kumpu as the actors in these incidents. As a result of this harassment, Suzanne Sullivan testified on deposition that she suffered intense anxiety and fear. At the time of her husband's arrest she was pregnant and suffering from preeclampsia diagnosed about two weeks before, a condition resulting in the stillbirth of her child in October 1978. The plaintiffs ascribe this loss, the subsequent deterioration of their marriage and their eventual divorce directly to the harassment they have alleged.

The plaintiffs also allege that the defendant selectmen, and through them the Town, encouraged or acquiesced in this harassment by failing to discipline the police defendants.

In addition to the meeting with Struthers and Jackson at Town Hall the evening of August 14, 1978, John Sullivan had several contacts with the defendant selectmen. Selectwoman Jane Jackson testified by affidavit that Sullivan once called her to complain about a cruiser parked in front of his house and she advised him to make a formal request for action by the Board of Selectmen. He did not do so. She declared that he also spoke with her on only one other occasion to tell her that his wife had had a stillbirth.

Sullivan spoke to Selectman Robert Struthers twice shortly after the hearing on August 22 to ask if the selectmen had made a decision on his complaint against the police, called to tell him the results of a medical examination concerning nerve damage done by the handcuffs he had worn, visited him to tell Struthers of the stillbirth of his child, visited him to demand that Struthers remove the police chief, and called to complain about a police cruiser parked across the street from his house. Struthers stated he consistently told Sulli-

van to raise his complaints formally before the Board of Selectmen. The plaintiffs also assert that Struthers approached John Sullivan shortly after the stillbirth and offered to have the criminal charges dropped if Sullivan would release the Town and officers from civil liability. Suzanne Sullivan never spoke directly with either of the defendant selectmen.

John Sullivan was acquitted of the criminal charges of assault and disorderly conduct on May 25, 1979. He asserts that the alleged harassment stopped early in 1981. He never formally lodged any further complaints with the Board of Selectmen after the hearing on August 22, 1978.

■ John Sullivan has stated viable claims under 42 U.S.C. § 1983 for false arrest, the use of excessive force and malicious prosecution. *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir.1980). There is no need for abstention with respect to the claim of malicious prosecution, as in *Landrigan*, because the criminal proceeding has terminated in a finding of not guilty. In this circuit, the existence of state remedies does not preclude action under § 1983 for unconstitutional deprivation of liberty and excessive use of force, despite *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *Voutour v. Vitale*, 761 F.2d 812, 818 n. 4 (1st Cir.1985). His claims under state law for assault and battery, false arrest and malicious prosecution arise out of the same operative facts and are within the pendent jurisdiction of the court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). John Sullivan has also stated a claim for emotional distress. To the extent this is alleged to be the result of the false arrest, excessive use of force and malicious prosecution, it is an element of damage, but not if it is the result of the alleged subsequent harassment, as stated hereinafter.

■ In my opinion, the Sullivans' claim for damages for emotional distress for their alleged harassment by police officers following the arrest is not cognizable under 42 U.S.C. § 1983. It does not appear that the harassment was intended to dissuade the plaintiffs from complaining to the Board of Selectmen or as retaliation for filing a claim. While the plaintiffs may have alleged a tort under state law, the commission of a tort by a person acting under color of state law does not create liability unless there is also a violation of the United States Constitution or a federal law. *Paul v. Davis*, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). No federal statutes are involved; no deprivation of liberty or property is alleged under the Fourteenth Amendment. Plaintiffs apparently rely on a generalized right "to marry, establish a home and bring up children". *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). The thrust of the protection afforded to such rights by the Constitution is the guarantee that freedom of choice with respect to those matters will not be circumscribed by state imposed restrictions. *Zablocki v. Redhail*, 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978). No such restrictions on freedom of choice were imposed on the plaintiffs. While it is true that harassment by police officers may impair the enjoyment of life in all its aspects, that is true of many torts with no constitutional implications.

■ The question then remains whether the court may retain jurisdiction of the plaintiffs' state law tort of intentional infliction of mental and emotional distress. It seems clear that the claim of Suzanne Sullivan may not be retained, since she has no viable federal claim. She would be a "pendent party". In *Aldinger v. Howard*, 427 U.S. 1, 14–16, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976), the Court ruled that pendent jurisdiction could not be exercised over a defendant against whom there was no federal claim, even though the claim under state law arose out of the same operative facts. The language in the opinion is directed to the status of the defendant who would not be otherwise in federal court and does not quite reach the case of a

"pendent plaintiff". Several district courts have reached the conclusion that there is similarly no jurisdiction over the case of a pendent plaintiff. In *Leopold v. Birkett*, 523 F.Supp. 525 (E.D.N.Y.1981), the plaintiff husband claimed damages for alleged police brutality under 42 U.S.C. § 1983 and state tort law. His wife sued for loss of consortium. Judge Nickerson dismissed the wife's claim in reliance on *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), *Aldinger v. Howard*, *supra*, and *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

These three decisions leave the distinct impression that a majority of the Supreme Court would hold that ancillary jurisdiction does not exist over Sylvie Leopold's claim. It is true that all the claims asserted in this case by both spouses will depend upon much the same proof and that judicial economy would be served if all of them were tried in one proceeding. But this factor was not enough to convince the Supreme Court in situations equally persuasive. Indeed, if one can distill any useful general principle from its recent opinions, it is that the Court does not look favorably on efforts to assert claims ancillary to federal cases, except perhaps in those instances where the argument of judicial economy and convenience can be coupled with the circumstance that only in a federal court may all the claims be tried together. 523 F.Supp. at 527. I agree. Accordingly, Suzanne Sullivan's state law claims must be dismissed for lack of jurisdiction. It is arguable that the court could take pendent jurisdiction of John Sullivan's claims arising out of the alleged harassment if these claims arose out of the same operative facts. This would be a very tenuous although arguable conclusion. In my view the alleged harassment arises out of a discrete set of facts which although connected to the arrest and other events of August 14 in terms of possible motivation and animus would require completely separate proof. In any case, retention of pendent jurisdiction is addressed to the sound discretion of the court, and one of the guiding factors is judicial economy. Because totally different evidence is required to sustain the claim of mental distress resulting from harassment, no judicial economy will result from retaining jurisdiction. On the contrary, since Suzanne Sullivan's claims arising out of harassment must be tried in state court (if at all), judicial economy requires that her husband's claims arising out of the same facts be tried there also.

For the reasons stated above, Suzanne Sullivan's claims for loss of consortium must also be dismissed. It doesn't seem to me that the complaint states a claim for loss of consortium in any case. It appears that Mr. Sullivan was released approximately two hours after his arrest. It is not alleged that his injuries, physical or emotional, have in any way prevented him from being a companion to his wife and performing the usual connubial duties. To be sure, the marriage eventually ended in divorce, but it appears from the affidavits of the parties that Mrs. Sullivan decided she didn't want any more consortium and walked out. My understanding of the state law claim for loss of consortium is that some substantial period of spousal absence or disability is required. I doubt that a two-hour absence is actionable. The complaint suggests that Mr. Sullivan is also claiming loss of consortium because of the emotional breakdown of his wife, but this arises out of the alleged harassment. His claim of loss of consortium is ancillary to his wife's claim of a state tort. As I have indicated, both must be tried in state court.

Given my disposition of these claims on jurisdictional grounds, I will not discuss the issues of causation and foreseeability of the injuries alleged by the plaintiffs, although these issues have been extensively briefed by the parties, except to note that they are indeed serious questions.

The plaintiffs' claims under M.G.L. c. 12, §§ 11H and 11I must be dismissed because the statute was not passed until a year after the alleged unlawful arrest.

There remains the claims against the selectmen and the town. These arise out of the alleged harassment. As indicated above, these claims are not founded on federal law, there is no pendent jurisdiction with respect to Suzanne Sullivan's claim and as a matter of discretion I decline to exercise pendent jurisdiction over John Sullivan's claim, assuming the doubtful proposition that any exists. Accordingly, the claims against the selectmen must be dismissed.

The case against the Town of Townsend raises a novel question. Liability under § 1983 may only be predicated on a municipal policy. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court has recently held that a policy of officially sanctioned use of excessive force cannot be inferred from a single instance. *City of Oklahoma City v. Tuttle,* — U.S. —, —, 105 S.Ct. 2427, 2435–37, 85 L.Ed.2d 791 (1985). In that case, and in the typical police case such as *Voutour v. Vitale, supra,* the action complained of is that of one or several policemen. In this case, the police defendants constitute the entire police force of Townsend, including the chief. If, as seems likely, the chief of police was for practical purposes the effective policymaker on police matters, then town policy was being made on the spot, and the Town should be liable notwithstanding *City of Oklahoma City v. Tuttle, supra,* which does not deal with this unique exurbian phenomenon.

*Summary.*

The defendants' motions are DENIED with respect to John Sullivan's claims against the police defendants and the Town under 42 U.S.C. § 1983 for the events of August 14, 1978 and related state common law causes of action, i.e., assault and battery, false imprisonment and malicious prosecution. The defendants' motions for summary judgment are ALLOWED in all other respects and all of the plaintiffs' other claims are DISMISSED.