Jose Denis RODRIGUEZ, et al.,
Plaintiffs, Appellees,

v.

Juan COMAS, Defendant, Appellant.

No. 87–1318.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1988.

Decided May 30, 1989.

As Amended on Denial of Rehearing
Oct. 11, 1989.

Opinion on Rehearing and Rehearing En
Banc Denied Nov. 7, 1989.

Anabelle Rodriguez, Asst. Sol. Gen., Dept. of Justice, Guaynabo, P.R., with whom Hon. Rafael Ortiz Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., Ponce, P.R., were on brief, for defendant, appellant.

Harry Anduze Montano, Santurce, P.R., for plaintiffs, appellees.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

WISDOM, Senior Circuit Judge:

This appeal requires the Court to consider again the question of qualified immunity and to determine a principled basis for the addition of plaintiffs as pendent parties.

Jose Dennis Rodriguez, an attorney for the Municipality of San Juan, and Irma Colon Rodriguez, his wife, sued Juan Co-

---

* Of the Fifth Circuit, sitting by designation.

mas Valle under 42 U.S.C. § 1983 and Puerto Rican law. They allege that Comas, a police officer for the Commonwealth, arrested Rodriguez in violation of his federal constitutional rights. The jury awarded Rodriguez $75,000 and his wife $25,000. Comas argues that he is protected from liability by qualified immunity and that Mrs. Rodriguez is a pendent party plaintiff improperly before the court. We affirm the judgments for both the Rodriguezes.

## I

On May 2, 1984, Rodriguez was in the San Juan District Court representing his uncle, Jose Matos, who had been charged by his estranged common law wife, Maria Davila, with making threats against her, a misdemeanor under Puerto Rican law. Comas informed Rodriguez that he was investigating the charge and that Hestor Quinones, an assistant district attorney, wished to speak to him about threats he had made to Davila. Comas asked for his "generales": name, address, telephone number, and other information. Rodriguez replied that he could not speak to Quinones then because Matos's case had not been called. He refused to respond to questions about his "generales". Comas left to consult with Quinones. About an hour later, Comas again approached Rodriguez and told him that the district attorney wished to speak with him. Rodriguez said that he was willing to see Quinones after the trial of the Matos case and started to enter the anteroom to the courtroom. Comas then stepped in front of him and asked three times for his name, and "generales". Both men became excited, raised their voices, and spoke loudly so that their voices were audible in the room and in the hallway, where there were, of course, lawyers and their clients. Comas then summoned a marshal who escorted Rodriguez to Judge Arroyo. Rodriguez identified himself and explained that he could not accompany Comas for questioning because he expected

his uncle's case to be called. Judge Arroyo instructed Comas to leave Rodriguez alone until after the Matos hearing was over.

Rodriguez's case was not called by the end of the day, at which time Comas confronted Rodriguez outside the courtroom and announced that he was under arrest.[1] Comas charged Rodriguez with obstructing justice and also with having made threats against his uncle's wife. Comas took Rodriguez to the "cuartelillo" where there were manacled prisoners charged with criminal offenses. Rodriguez remained there for several hours before he was released.

Several weeks later, a magistrate found that there was no probable cause for Rodriguez's arrest for allegedly making threats, but that there was probable cause to arrest Rodriguez for obstructing justice. On August 8, 1984, after a jury trial, Rodriguez was acquitted.

Rodriguez brought this action on May 2, 1985. He said that the public arrest and publicity caused embarrassment, psychological trauma, physical pain, and such emotional distress that he was absent from work for 108 days. The trial judge dismissed his wife's federal claim but allowed her to remain as a pendent party plaintiff. Vol. I at 83–4. On February 13, 1987, the jury found for both plaintiffs, awarding Rodriguez $75,000 and his wife $25,000.

## II

Comas moved for a directed verdict after Rodriguez presented his evidence. Comas argued that he was entitled to qualified immunity. Tr. vol. II, at 214. The district court denied the motion. Id. at 226. Comas renewed the motion at the close of the trial. The court denied it again. Vol. III at 362.

Qualified immunity protects governmental employees from liability, from discovery, and from trial.[2] We should extend qualified immunity to Comas if we conclude

1. Puerto Rican law allows arrests for misdemeanors only if the act takes place in the officer's presence. P.R. Laws Ann. tit. 33, § 4194, § 4493, tit. 34, App. R. 7, 11.

2. *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396, 408 (1982).

that "a reasonable officer could have believed [arresting Rodriguez] to be lawful, in light of clearly established law and the information the [arresting] officer[ ] possessed".[3] We first examine the law, to determine whether the right allegedly violated was "clearly established"; if so, the defendant should reasonably have known of the right. Second, we examine the defendant's conduct, to establish whether objectively it was reasonable for him to believe that his actions did not violate a "clearly established" right.

The landscape in which this standard rests has changed recently. The standard in its original form arguably required only that plaintiffs state a "clearly established" right in their allegations. This formulation dissuaded courts from examining the evidence plaintiffs could adduce to support their allegations. The Supreme Court equated appellate review of motions to dismiss with review of motions for summary judgment,[4] and this Court restricted interlocutory appellate review of denials of summary judgment to examination of plaintiffs' allegations.[5]

In 1987, the Supreme Court announced that the right to qualified immunity must be clearly established, not as a general matter but "in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right".[6] Accordingly, this Court has since reviewed the entire record developed on summary judgment.[7] This procedure allows courts to determine the official's knowledge more accurately than had been possible when review was restricted to the allegations in the complaint.

We turn now to the substance of Comas's appeal. Rodriguez's right to refuse to answer Comas's questions is clearly established. As the target of Comas's investigation, Rodriguez could of course refuse to answer potentially incriminating questions. Comas's investigation had not developed enough to bring Rodriguez's Fifth Amendment rights into play, however. Comas knew that under Puerto Rican laws he could not arrest Rodriguez for the misdemeanor of threatening his client's estranged wife. Threats constitute a misdemeanor[8] for which an arrest before investigation is allowed only if the act takes place in the officer's presence.[9] He did, however, have reasonable suspicion to question Rodriguez. Comas tried to ratchet Rodriguez's failure to cooperate with this investigation into justification for an arrest. The Supreme Court, however, has consistently held that a person's refusal to comply with a police officer's justified *Terry* stop does not, by itself, warrant arrest.[10] More than a year before Comas arrested Rodriguez, Justice White stated, as clearly established law:

> The person approached [by a police officer], however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.[11]

This passage announces no change in law. It reaffirms the principle declared in *Brown v. Texas:* a person cannot be arrest-

---

**3.** *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 532 (1987).

**4.** *Mitchell v. Forsyth,* 472 U.S. 511, 527, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 426 (1985).

**5.** *Bonitz v. Fair,* 804 F.2d 164 (1st Cir.1986). We recently overruled *Bonitz. See infra* note 7.

**6.** *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531.

**7.** *Unwin v. Campbell,* 863 F.2d 124 (1st Cir. 1988), *overruling Bonitz,* 804 F.2d 164.

**8.** P.R.Laws Ann. tit. 33, § 4194.

**9.** *Id.* at tit. 34, App.R. 7, 11.

**10.** *United States v. Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**11.** *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229, 236 (1983) (opinion of White, J.). Four justices joined this opinion. The other five justices did not disagree with the language quoted above.

ed for failing to cooperate with an investigation when law enforcement officials do not have "reasonable, objective" justification for an arrest.[12]

We now consider whether a reasonable official would have believed that arresting Rodriguez for obstructing an investigation violated Rodriguez's right to refuse to answer questions. In deciding this question, we examine the record as a whole and draw all reasonable inferences in favor of Rodriguez, the nonmoving party. Under Puerto Rican law, Comas could only summon Rodriguez for questioning. Rodriguez's refusal to provide his name could impede Comas's investigation, then, only if it prevented Comas from summoning Rodriguez. No reasonable officer could conclude that it did. Rodriguez offered to appear for questioning after he finished his business in court. Rodriguez's name and address were available in the file on the case that Comas investigated. The complainant knew Rodriguez and could easily have provided the information Comas sought. Rodriguez identified himself to two judges in Comas's presence. Comas should have availed himself of these easily accessible sources for Rodriguez's name.[13]

Indeed, it appears that Comas's questioning and arrest of Rodriguez in the presence of other lawyers were humiliating forms of harassment. Comas had attended a hearing in April 1984 at which Rodriguez had identified himself. Vol. II at 171–72. At that hearing, Rodriguez testified, "I identified myself for the record and Agent Comas is next to me". Vol. II at 171–72. A fellow officer of Comas said in his deposition that Comas knew Rodriguez's name before May 2, although he changed his testimony when he appeared as a witness for Comas. Vol. III. When Rodriguez arrived at the courthouse on May 2, he found Comas talking with his client. He told Comas that he wished to speak with his client. Vol. I at 99. Rodriguez's aunt

pointed Rodriguez out to Comas. III at 289. An hour later, Comas informed Rodriguez that a district attorney wished to talk with him; he knew who Rodriguez was. Rodriguez testified that Comas addressed him by name. Vol. II at 167. Comas started, or at least escalated, a dispute audible to Rodriguez's colleagues and the judges before whom he would appear. Minutes later, Comas heard a judge explain that Rodriguez had to remain for a case. Vol. I at 119. Rodriguez offered to meet the district attorney later. At this point, then, Comas knew Rodriguez's name and knew that Rodriguez had an unassailable reason not to appear for questioning. Yet Comas accosted Rodriguez at the next available opportunity and arrested Rodriguez immediately. He announced the arrest in a loud voice. He and another officer escorted Rodriguez through the hallways of the courthouse. At the end of this public humiliation, Comas placed Rodriguez in a holding room. He then left Rodriguez there, in the presence of several manacled prisoners, for several hours.

Comas argues that he did not know Rodriguez's name before they went into the preliminary hearing courtroom a few minutes after 10:00 that morning. He asserts that he had arrested Rodriguez before then. Vol. III at 299. At that time the arrest was reasonable, he says. Rodriguez testified that he was arrested at about 4:30 p.m., immediately after leaving the courtroom. We leave aside for the moment the question whether a reasonable officer would have retained custody after talking with the judge. We note only that the evidence favors Rodriguez. Three witnesses described the encounter in the morning. One police officer, who appeared as a defense witness, said he stood within a few feet of Comas and Rodriguez. Two judges talked to the two men. None of the three testified that they heard any mention of an arrest. The arrest record, written by Co-

---

**12.** *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). *See also Immigration & Naturalization Service v. Delgado,* 466 U.S. 210, 216–17, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247, 255 (1984).

**13.** *See, e.g., Sevigny v. Dicksey,* 846 F.2d 953, 958 (4th Cir.1988) (qualified immunity not available to police officer who fails to use information available to him); *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986) (same).

mas himself, says the arrest took place at 4:20 p.m. At that time, although Comas knew who Rodriguez was, the record of the arrest lists the person arrested as "John Doe, a/k/a Licensianado Rodriguez".

We hold that Rodriguez's right not to be arrested because he refused to answer Comas's questions was clearly established. We also find that a reasonable law enforcement official would have believed that arresting Rodriguez violated that right.[14] We therefore affirm the district court's denial of qualified immunity.[15]

### III

Rodriguez's wife, Irma Colon Rodriguez, sued Comas under Section 1983 and Puerto Rican law. The district court properly held that Section 1983 does not create a federal cause of action for the emotional distress of a spouse. It dismissed her federal claim. Vol. I at 10. It retained Mrs. Rodriguez as a pendent party plaintiff based on her state law claims. *Id.* at 82–3. Comas appeals. We affirm.

■ This Court has not previously decided whether a plaintiff may be added as a pendent party. The Supreme Court has set forth a three part test for evaluating jurisdiction over pendent parties in federal question cases: (1) the pendent party's claim must share a common nucleus of operative fact with a claim over which federal courts have jurisdiction, and the parties must also expect to try the claims in the same proceeding;[16] (2) the exercise of pendent party jurisdiction must not be expressly or implicitly disapproved by the statute creating jurisdiction over the claim to which the pendent party appends her claim; and (3) pendent party jurisdiction must promote judicial economy and avoid jury confusion.[17]

There is no doubt that Mrs. Rodriguez's claim meets the first requirement. We must ask what constitutes congressional approval or disapproval of pendent party plaintiffs. In this regard, many congressional statements or silences may be construed as either disapproval or consent.[17a] Courts have therefore looked elsewhere. They allow pendent party defendants when Congress has declared federal courts the exclusive forum for adjudicating particular claims.[18] Conversely, when federal courts are not the exclusive forum, courts generally deny attempts to add defendants as pendent parties.[19] The requirement of exclusivity creates a bright line rule that too often obscures important policies underlying it. By creating exclusive federal jurisdiction, Congress indicates that important federal interests are at stake. These interests are not exhausted by those causes of action that can be brought only in federal court. They may also reach policies, incentives, or goals affecting causes of action that may be brought in state court. Courts respect the weight Congress attached to federal interests by admitting to federal court those parties defending state law

---

**14.** A judge found that there was probable cause to arrest Rodriguez for obstructing an investigation. This Court has held that a judicial finding of probable cause does not entitle a law enforcement official to qualified immunity. *Malley v. Briggs,* 748 F.2d 715 (1st Cir.1984), *aff'd,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The official's conduct must be evaluated independently of subsequent judicial approval.

**15.** Comas was represented at trial and on appeal by attorneys for the Commonwealth of Puerto Rico. The Supreme Court has concluded that governmental insurance and defense of officials should not change the analysis of arguments for qualified immunity. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d at 532 n. 3.

**16.** *Gibbs v. United Mine Workers,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**17.** *Aldinger v. Howard,* 427 U.S. 1, 14–16, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276, 286–87 (1976). *See also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978).

**17a.** *Cheltenham Supply Corp. v. Consolidated Rail Corp.,* 541 F.Supp. 1103, 1106 n. 5 (E.D.Pa. 1982).

**18.** *See e.g., Lovell Mfg. v. Export–Import Bank of United States,* 843 F.2d 725 (3rd Cir.1988). *But see Finley v. United States,* —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (forbidding pendent party jurisdiction when federal litigation brought under 28 U.S.C. § 1346(b), which confers exclusive jurisdiction on federal courts).

**19.** *See infra* note 23 (listing cases).

claims which share a common nucleus of operative fact with claims over which there is exclusive federal jurisdiction.[20] This reasoning retains its force when federal jurisdiction is not exclusive. Its application demands more subtlety, however, and factors opposing jurisdiction may deserve more weight.

We begin this careful determination by noting that a different calculus applies to pendent party plaintiffs than is used to evaluate attempts to add defendants as pendent parties. In *Aldinger*, the Supreme Court suggested that the boundaries of Article III are stretched furthest when a party is unwillingly subjected to federal jurisdiction.[20a] Pendent party plaintiffs are usually willing to enter federal court.[20b] Hence, admitting them does not approach the boundaries to federal jurisdiction surveyed in *Aldinger*.[20c] Indeed, it would seem to us that federal courts have jurisdiction to admit pendent party plaintiffs when those plaintiffs' claims share a common nucleus of operative fact with claims against a defendant already properly in federal court, when the shared nucleus of fact in each case implicates the concerns that prompted Congress to allow the defendant to be haled into federal court. This is a matter of statutory construction. When federal jurisdiction is exclusive, admission

of the pendent party plaintiff will be virtually automatic. When federal jurisdiction is not, the inquiry will be more difficult. Of course, once courts conclude that pendent party jurisdiction furthers, or at least does not frustrate, congressional intent, they must decide whether exercising jurisdiction enhances judicial economy and avoids jury confusion.

Admittedly, allowing plaintiffs to choose either state or federal court when their claims share a common nucleus of operative fact with those over which there is independent federal jurisdiction allows them to shop for a forum. It is, however, a basic tenet that a plaintiff may choose his forum. This power has a counterpart in defendants' removal power. 28 U.S.C. § 1441(c) authorizes defendants in federal question cases to request removal of "the entire case", including "non-removable claims or causes of action" if they were initially brought in state court with a "separate and independent claim or cause of action, which would be removable if sued upon alone".[21] Section 1441(c) establishes that under certain conditions defendants have the right to choose federal courts for trial of claims that otherwise could not be there. This power is equally as broad as the pendent party plaintiffs' power we recognize here.[22]

**20.** For the same reason, federal courts may exercise jurisdiction over causes of action that may not be brought into federal court under their original jurisdiction. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720, 730 n. 7 (1988) (implying that federal courts retain jurisdiction over state law claims removed to federal court after federal claim allowing removal dismissed, although discretionary factors will usually lead court to remand or dismiss state claims); *Boelens v. Redman Homes,* 759 F.2d 504, 507 (5th Cir.1985) (plaintiff's voluntary dismissal of federal causes of action does not deprive federal court of jurisdiction over state law claims). *Cf. Huffman v. Hains,* 865 F.2d 920 (7th Cir.1989) (upholding district court's discretionary refusal to allow pendent party plaintiff, without deciding constitutionality of pendent party jurisdiction).

**20a.** *Aldinger,* 427 U.S. at 18, 96 S.Ct. at 2422, 49 L.Ed.2d at 287.

**20b.** Even those plaintiffs who choose state courts may be haled into federal court without

violating Article III. *See Federal Deposit Insurance Corp. v. Otero,* 598 F.2d 627, 630–32 (1st Cir.1979) (removal by co-defendant United States brings plaintiff with state law claims into federal court as pendent party); *infra* text accompanying notes 21–22 (discussing defendant's removal power under 28 U.S.C. § 1441(c)).

**20c.** *See Kennedy v. Cleveland,* No. C82–2932 (N.D.Ohio June 24, 1983), slip op. at 7–8.

**21.** Section 1441(c) provides:

Whenever a *separate and independent* claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

**22.** Some courts of appeals have found little if any use for Section 1441(c) in federal question cases. *See Thomas v. Shelton,* 740 F.2d 478,

Turning to the merits of this case, we note that Section 1983 does not provide exclusive federal jurisdiction over the federal claims in this case. Congress has not, therefore, made admission of pendent party plaintiffs automatic. Nearly every court that has considered this issue has regarded this fact as compelling dismissal of pendent party plaintiffs in cases brought under Section 1983.[23] These courts have not examined fully the policy underlying Section 1983, however. As the district court concluded in the present case, Section 1983 is a remedial statute. Although its ambit is restricted to violations of the federal constitution, its aim is advanced by allowing federal courts to provide remedies for injuries that, although derived from other law, share a common nucleus of operative fact with Section 1983 claims. Mrs. Rodriguez's claim does so. Moreover, unlike the county in *Aldinger*, she is not a party specifically excluded from actions brought under Section 1983. Also, Comas is already in federal court. We therefore conclude that pendent party jurisdiction over Mrs. Rodriguez's claim is not statutorily barred.

We also find no abuse of discretion in the district court's decision to exercise jurisdiction in this particular case. Admitting Mrs. Rodriguez's claim promotes judicial economy, and we see no unfairness to defendant in allowing her to pursue her claim as part of her husband's case. Hence, we affirm the district court's decision to admit Mrs. Rodriguez as a pendent party plaintiff.

## IIIA

■ After the panel opinion was completed, but before it was released, the United States Supreme Court issued its opinion in *Finley v. United States*, — U.S. —, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Barbara Finley brought suit in federal court against the Federal Aviation Administration under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) (1976) (granting exclusive jurisdiction to federal courts). She moved to amend the complaint to add parties against whom she had state-law claims arising from the same facts. The Supreme Court held that she could not add the pendent parties.

*Finley* does not change our conclusion. In *Finley*, 109 S.Ct. at 2007–08, the Supreme Court observed that the test for pendent party jurisdiction involves not only the *Gibbs* requirement of a common nucleus of operative fact, but also consideration of two other factors: "posture" or "context" and the text of the jurisdictional statute that confers jurisdiction over the federal claim. Those factors are significantly different in this case than in *Finley*, and they lead here to the conclusion that pendent jurisdiction properly may be exercised.

First, in looking to context, the district court carefully noted that the arguments advanced by Mrs. Rodriguez, the pendent party before us, as well as the remedies she seeks, track the concerns that govern section 1983, under which her husband seeks relief. The point of the FTCA, conversely, is to provide relief for individuals

482–84 (7th Cir.1984) (Posner, J.) One substantive amendment to the Section, however, deleted the requirement of complete diversity. *See* 28 U.S.C. § 1441(c) (advisory committee notes). Congress therefore saw some utility for it in federal question cases. We have identified one such use: it provides defendants with a way to counter plaintiffs' power to choose between state and federal courts.

**23.** The following cases have forbidden pendent party plaintiffs when the federal action was brought under Section 1983: *Rojas v. Alexander's Dept. Store*, 654 F.Supp. 856, 859 (E.D.N.Y. 1986); *Sullivan v. Marshall*, 628 F.Supp. 1080, 1083–84 (D.Mass.1985); *Fritts v. Niehouse*, 604 F.Supp. 823, 827–30 (W.D.Mo.1984); *Stanley v. City of New York*, 587 F.Supp. 393, 397 (E.D.N.

Y.1984); *McArthur v. Robinson*, 568 F.Supp. 393, 397 (E.D.Ark.1983); *Buikema v. Hayes*, 562 F.Supp. 910 (N.D.Ill.1983); *Walters v. Village of Oak Lawn*, 548 F.Supp. 417, 420 (N.D.Ill.1982); *Leopold v. Birkett*, 523 F.Supp. 525 (E.D.N.Y. 1981). *Cf. Lichtie v. United States Home Corp.*, 655 F.Supp. 1026, 1030–31 (D.Utah 1987) (pendent party plaintiff dismissed because securities laws do not make federal courts exclusive forum); *Red Elk v. Vig*, 571 F.Supp. 422, 426 (D.S.D.1983) (Section 1985); *Marcano v. Northwestern Chrysler Plymouth Sales, Inc.*, 550 F.Supp. 595, 604 (N.D.Ill.1984) (Truth in Lending Act). *But see Kennedy*, No. C82-2932 (June 24, 1983) (allowing pendent party plaintiff in Section 1983 action).

against the federal government while denying the consent of the United States to being sued in the courts of other sovereigns, the states. It ensures a federal forum for federal agencies. This purpose does not cross paths with tort suits against private individuals or other governmental bodies. Thus, because the pendent claims here arise from a foundation analogous to that underlying section 1983, Mrs. Rodriguez relies on more than "mere factual similarity" in support of her claim for pendent jurisdiction. *See Finley,* 109 S.Ct. at 2008.

Second, and more important, the language of the jurisdictional grant in *Finley* is very different from that in the case we now decide. In *Finley,* the plaintiff argued that the jurisdictional grant in section 1346(b) was broader than the substantive purpose of the statute. The Supreme Court, however, rejected her contention that jurisdiction existed for more than just tort claims against the United States primarily because the statute explicitly and *exclusively* conferred jurisdiction over claims "against the United States." The Court read those words to mean "against the United States and no one else." 109 S.Ct. at 2008. In this case, however, the grant of jurisdiction is over *"any civil action* authorized by law to be commenced by *any person ..."* (emphasis added). 28 U.S.C. § 1343(a). In contrast to the very limited scope of jurisdiction found on the face of section 1346(b), the jurisdictional statute here is open-ended—applying to any person and over any civil action.

Thus, this case involves both a broadly worded jurisdictional grant and claims by the putative pendent party that intersect with the objectives and concerns of section 1983. The limitation preventing the exercise of pendent jurisdiction in *Aldinger*—that Congress had explicitly excluded the particular defendant—is not present here. Pendent jurisdiction over Mrs. Rodriguez's claims therefore is permissible.

## IV

■ Comas next argues that the damage awards are excessive. We reduce the awards only if they are "so grossly disproportionate to the injuries ... as to be unconscionable".[24] Rodriguez first sought psychiatric help on June 28, 1984, approximately seven weeks after his arrest. His psychiatrist testified that Rodriguez suffered "a post traumatic stress disorder" involving "chest pains, headaches, insomnia, and recurrent invasive recalls or memories of the events". Vol. I at 278. The psychiatrist attested that this disorder persisted throughout the twenty months he treated Rodriguez. The psychiatrist concluded that the disorder resulted from Rodriguez's arrest by Comas. Rodriguez missed 108 days of work. We cannot say that the awards should be reduced; they do not shock the conscience of the court.[25] The Rodriguezes established that they suffered for at least twenty months as a result of Comas's baseless actions. It is the jury's role to "plac[e] a value on human suffering".[26]

## V

A reasonable officer would have known that in the circumstances of this case the arrest of Rodriguez violated the lawyer's clearly established right. Comas therefore does not merit qualified immunity. Be-

---

**24.** *Laaperi v. Sears, Roebuck, Inc.,* 787 F.2d 726, 735 (1st Cir.1986).

**25.** *McDonald v. Federal Laboratories,* 724 F.2d 243, 247 (1st Cir.1984).

**26.** *McDonald,* 724 F.2d at 247 ($789,650 award for physical injury upheld when no permanent disability shown). *See also Sevigny,* 846 F.2d 953 (upholding $133,000 award for emotional distress when applying standard used in First Circuit); *Wagenmann v. Adams,* 829 F.2d 196, 215–17 (1st Cir.1988) (award of $250,000 for false arrest not excessive). Comas urges us to apply the standard of *Keyes v. Lauga,* 635 F.2d 330 (5th Cir.1981) (Wisdom, J.). In *Keyes,* the Fifth Circuit instructed the trial court to reduce an award of $75,000 for emotional distress. The court announced a "best evidence" rule. This rule allowed appellate courts to vacate awards in excess of what the court felt the plaintiff's best evidence would bear. This Circuit, conversely, vacates jury awards only if they are unjust and unconscionable. *See McDonald, supra.* This standard allows juries more latitude than does the Fifth Circuit's rule.

cause Mrs. Rodriguez's presence promotes judicial economy, furthers the remedial goal of Section 1983, and shares a common nucleus of operative fact with her husband's federal claim, she is properly before the court as a pendent party plaintiff. The awards of $75,000 to Rodriguez and $25,000 to Mrs. Rodriguez are not excessive. The trial court's verdict is AFFIRMED.

SELYA, Circuit Judge.

I respectfully dissent from the court's denial of the Commonwealth's petition for rehearing. Part III of the panel's opinion approaches the question of pendent-party jurisdiction in terms of a new, unprecedented analytic modality—a modality which I find at material variance with the teachings of the Court. *See, e.g., Aldinger v. Howard,* 427 U.S. 1, 14–19, 96 S.Ct. 2413, 2420–23, 49 L.Ed.2d 276 (1976). Joinder of claims, not joinder of parties, is the object of pendent jurisdiction. The doctrine was not designed to allow a party without a federally cognizable claim to obtain access to a federal forum by the simple expedient of joining forces with a different plaintiff asserting an independent claim, even one stemming from the same operative facts. That the two plaintiffs are spouses makes no difference, *see, e.g., Arnold v. Troccoli,* 344 F.2d 842, 843 n.1 (2d Cir.1965); nor does the fact that 42 U.S.C. § 1983 is in play, *see, e.g.,* cases listed in Panel Op. at 16 n. 23.

In a nutshell, the claims of Jose Rodriguez and Irma Rodriguez are severable for purposes of determining federal jurisdiction and must be treated as such. The panel's approach blurs this distinction, stretching both doctrine and application beyond permissible limits. For that reason, and consistent with the near-unanimous weight of authority, I would grant the instant petition in order to reconsider Part III of the panel's opinion.