Bruce A. **PERREAULT**

v.

Dana **THORNTON.**

**Civ. A. No. 91–0010 P.**

United States District Court,
D. Rhode Island.

Dec. 6, 1991.

Bruce A. Perreault, pro se.

Gretchen Leah Witt, Asst. U.S. Atty., U.S. Attorney's Office, Concord, N.H., for Dana Thornton.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

In the summary judgment motion before the Court, the dispositive question centers on the defendant's possible qualified immunity. I find the defendant entitled to qualified immunity; defendant's motion for summary judgment is granted.

### I

On October 10, 1990, the obviously recalcitrant plaintiff illegally parked his automobile in the Concord, New Hampshire Federal Building parking lot.[1] Though directed by the defendant, a Federal Protective Officer ("FPO"), to move his car, he refused to do so, exclaiming, "go to hell, you god damn communist." The defendant asked for the plaintiff's driver's license, but the plaintiff refused to proffer it. Instead, the plaintiff retorted, "I don't have to give you my driver's license unless I am under arrest for anything." The officer did not tell the plaintiff he was under arrest; instead, he began to push the plaintiff toward the federal building. The plaintiff described the encounter as follows:

> "Then he pushed me. He turned around and pushed me toward the building.... He kept on pushing me.... He was using his finger, thrusting at me.... My back ... I stumbled forward. He kept on doing that.... I believe that at that at that point he grabbed my arm was when he opened the door, and then pushed me in with his finger.... So I couldn't escape. I didn't know what this guy was going to do.... I called him a communist."

*See* Deposition of Bruce A. Perreault at 47 *et seq.*

This type of behavior continued until both entered the building and proceeded to the United States Attorney's Office located therein. The plaintiff further testified that in the United States Attorney's Office, the defendant again asked plaintiff for his driver's license and pushed him "against the wall ... he pushed me with his finger and then shoved me against the wall with his hand ... he shoved my legs apart and then I knew that he was frisking me." According to the plaintiff, when he was finally told he was being placed under arrest "for failure to comply with a federal officer," he readily showed his driver's license.

The defendant, after conferring with an assistant United States Attorney, issued a parking violation citation rather than charging the plaintiff with a misdemeanor. The plaintiff was not physically harmed, but he does claim to have sustained emotional injuries.

### II

The present motion is the second summary judgment action filed in this case. On October 17, 1990, the pro se plaintiff brought a civil rights action for false arrest against defendant Dana Thornton. On April 3, 1991, the defendant filed his first motion for summary judgment. On April 16, 1991, I granted the motion, on the grounds that the defendant "had the authority and the grounds to detain and even to arrest the plaintiff," and that his actions "comport[ed] with the general law of warrantless arrests, under which an officer may arrest without a warrant a person who commits a misdemeanor in the officer's presence." However, I also found that the complaint accused officer Thornton of using excessive force and that there was a factual dispute regarding the level of force used by the defendant. On this issue, the defendant's summary judgment motion was denied. *Rodriguez v. Comas*, 888 F.2d 899, 901 (1st Cir.1989).

In his second motion for summary judgment, the defendant argues that the plaintiff's allegations "do not state a claim for use of excessive force as a matter of law and that the defendant had qualified immu-

---

1. The New Hampshire federal judge recused himself from this case. The case was then referred to this Court. Jurisdiction remains with New Hampshire; I sit by designation.

nity, since a reasonably "prudent officer in the circumstances faced by FPO Thornton would have believed his or her actions to be lawful."

## III

Although the defendant raised two grounds for granting his summary judgment motion, I need only concern myself with the determination of qualified immunity. In essence, an award of qualified immunity disposes of the case.

### Standard for Qualified Immunity

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) enunciates a qualified immunity test which demands objective good faith. Though police officers are responsible for the natural consequences of their actions, they are entitled to qualified immunity from financial liability if their actions are not violative of constitutional rights which were clearly established at the time and about which a reasonable person would have known. A police officer can neither erect a shield of ignorance nor disregard settled law to justify his conduct.

> But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Id.* at 819, 102 S.Ct. at 2739, citing *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967).

In *Hall v. Ochs,* 817 F.2d 920, 924 (1st Cir.1987) (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738), the First Circuit decreed that "the objective reasonableness determination is for the judge to make and not for the jury." Because a police officer is expected to know the law, the inquiry is "nothing more than an examination whether the events at issue violated 'clearly established ... constitutional rights.' " In the area of qualified immunity, the analysis "shifts from a consideration of the plaintiff's rights to a consideration of the defendant's entitlements." *Rodi v. Ventetuolo,* 941 F.2d 22, 30 (1st Cir.1991).

Government officials hold qualified immunity so long as they "could reasonably have believed that their actions were lawful, given preexisting law and the information that they possessed." *Martin v. Marriner,* 904 F.2d 120, 121 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 696, 112 L.Ed.2d 686 (1991). The test of this belief is objective.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the action has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citation omitted). With this standard in mind, we turn to the regulations governing the encounter between plaintiff and defendant.

### Federal Parking Regulations

The analysis from this point on is rather straightforward. The first question I must answer is whether or not a misdemeanor was committed in the officer's presence; the answer is unmistakably yes. There are regulations for the management of federal buildings and grounds, including those which establish areas of non-public parking and those which authorize the issuance of citations to persons who violate the regulations. 40 C.F.R. § 101–20.104.1; 40 C.F.R. § 101–20.104(b)(3).

The government correctly argues that the regulations "require that '[p]ersons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal Protective Officers....' " 40 C.F.R. 101–20.304. Further, the regulations provide that "parking ... in locations reserved for other persons, or parking contrary to the direction of posted signs is prohibited." 40 C.F.R. § 101–20.312. The government does not treat violations lightly; a violator is subject to "a fine of not more than $50 or imprisonment

of not more than 30 days, or both." 40 U.S.C. § 318c; 40 C.F.R. § 101–20.315.

Under the regulations, an FPO has the authority to make an arrest when a misdemeanor has been committed in his presence and the individual who committed the act refuses to identify himself. *Id.* at Chapter 9, § 4(a)(2). *Federal Protective Officers Handbook,* PBS p 59.30.17A, Chapter 9, § 4(a)(2). This is no different than the general law of warrantless arrests. For a misdemeanor, "an arrest before investigation is allowed only if the act takes place in the officer's presence." *Rodriguez,* 888 F.2d at 901.

### Officer's Actions Must Be Neither Unreasonable Nor Egregious

The second question to be addressed is whether the defendant acted in good faith. *Ochs* holds that the judge need engage in "nothing more than an examination whether the events at issue violated 'clearly established constitutional rights.'" 817 F.2d at 924. In so doing, the Court must evaluate the "objective reasonableness of the [defendant officer's] conduct as measured by reference to clearly established law." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. United States Supreme Court precedent holds that an officer may still be entitled to immunity even though he acts unreasonably, if his conduct was objectively reasonable. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

I call the reader's attention to Kathryn R. Urbonya, *Problematic Standards of Reasonableness: Qualified Immunity in Section 1983 Actions for a Police Officer's Use of Excessive Force,* 62 Temp.L.Rev. 61 (1989). In an excellent exegesis of this subject, Professor Urbonya states, "[b]ecause the Court has determined that there are two standards of reasonableness, conduct may be 'unreasonable' within the meaning of the Fourth Amendment but nevertheless 'objectively reasonable' for the purposes of qualified immunity." *Id.* at 66. If the application of the *Harlow* standard permits trial judges to dismiss

insubstantial claims, then we must be expected to measure objective reasonableness in evaluating entitlement to a qualified immunity defense. I do not know how this can be done without a factual analysis.

The undertaking is not difficult in extreme cases which have Fourth and Fourteenth Amendment overtones. In a Fourteenth Amendment complaint, a police officer's *"egregious* conduct" is not condoned. *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (breaking into a bedroom and inducing vomiting to recover a swallowed capsule exemplifies egregious conduct). In *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985), involving a Fourth Amendment claim, the use of deadly force was subject to a *reasonableness* standard. The encounter presently under consideration does not reach such outer limits; nonetheless, the process is the same. Under either a Fourth or Fourteenth Amendment claim standard, I must apply a necessarily subjective analysis.[2]

In determining whether this was egregious or unreasonable conduct, I look to *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973). *Johnson* sets forth four factors to be considered for egregious conduct in an alleged Fourteenth Amendment claim: "[1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 1033.

In the Fourth Amendment context, *Tennessee v. Garner, supra,* held that the Court must consider the totality of the circumstances to determine whether the conduct was objectively reasonable. The Court should balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."

---

**2.** In his complaint, the pro se plaintiff recited the facts and merely stated: "clearly his [plaintiff's] civil rights were violated." I consider his claim as an alleged Fourth Amendment violation under 42 U.S.C. § 1983.

## IV

The mandate that I decide the issue of qualified immunity, as a matter of law, is tantamount to ordering that I, and not the jury, decide this case even though the facts may be subject to varying inferences. It seems to me the factual component in deciding a qualified immunity issue, termed a mixed question of fact and law, must be acknowledged; it presents the unique anomaly of a court, in a jury trial, performing a fact-finding function.

Did the officer act within the parameters of acceptable conduct? Was his conduct objectively reasonable, unreasonable, or egregious? If his conduct was necessary under the circumstances, then it was subjectively and objectively reasonable; if it was not necessary under the circumstances, then did it comport with clearly established law? One can argue it was unnecessary to arrest the plaintiff; however, it is clearly established law that an officer may arrest a person who commits a misdemeanor in his presence, provided the officer uses only reasonable force. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. *Johnson*, 481 F.2d at 1033.

Here, the defendant pushed and poked the plaintiff with his finger. But what if the body contact was more severe? At what level of conduct would the threshold from reasonableness to unreasonableness or egregiousness be crossed? I will not attempt to carve out such an amorphous and difficult definition. Perhaps I should simply say that I know what is reasonable; as for what is egregious, "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (J. Stewart, concurring).

As I assess reasonableness by weighing the need to arrest against the result achieved, *Lopez v. Aran*, 844 F.2d 898, 905 (1st Cir.1988), I must consider "the gravity of the public concerns served by the seizure; the degree to which the seizure advances the public interest; and the severity of the interference with the individual liberty." *Id.* In the setting of a parking lot squabble over the unauthorized use of a reserved parking space by an otherwise law-abiding citizen, it would appear ludicrous to hold that the arrest was justified. However, *Harlow, supra*, tells us that not only must a clearly established constitutional right be violated, but it must be a right a police officer is expected to know.

Because the facts preponderate so heavily in favor of the police officer and public policy, I conclude the FPO's conduct was objectively reasonable; indeed, he did nothing wrong. We must bear in mind that the setting of this case is federal property for access to the federal building which houses federal judges, the federal court, United States Attorney and assistant United States Attorneys, and federal post office with all its personnel. The need for security and traffic monitoring is manifest. It is expected that federal security officers will do their job. If I were to deny qualified immunity in this case, I would effectively eviscerate FPOs' authority to arrest for misdemeanors committed in their presence. A man who was obviously about to enter the federal building was admonished that his car was illegally parked. His response, "Go to hell, you god damn communist," clearly evoked the FPO's right to ask for identification.

We cannot belittle the gravity of the public concern involved here, albeit the incident stems from a mere parking violation. Litigious individuals who appear to be overly concerned about their civil rights are often the genesis of laws sacred to liberty and human dignity. However, even they are not free to independently roam at will in sensitive government controlled areas, immune from permissible inquiry as to their identity. The intrusion of the FPO in this case, when balanced against public policy concerns, encroached minimally on the plaintiff's liberty. The force used (if one can even call it physical force) consisted merely of finger-poking at plaintiff's body and a possible shove against a wall preceding a pat down search. "Not every contact by a police officer implicates constitutional rights; nor does every stop or detention

require probable cause." *Brennan v. Hendrigan,* 888 F.2d 189, 193 (1st Cir.1989).

The FPO acted reasonably, and, as I see it, the plaintiff's constitutional rights were not violated. I find, as a matter of law, that the defendant officer's conduct was proper, and that he is accordingly entitled to qualified immunity. The defendant's motion for summary judgment is granted.

SO ORDERED.